## The Toledo, Wabash & Western Railway Company

*v.*

## William Black.

1. **Negligence**—*injury in coupling cars.* In a suit by an employee of a railway company to recover damages of the company for a personal injury received while attempting to couple a car loaded with railroad iron with a caboose car, on the ground of negligence in the company in providing unsafe dead-woods and draw-bars, and from the careless manner of loading the iron, so as to leave the rails projecting. where the proof failed to show any defect whatever in the construction of the dead-woods and draw-bars, or that any better was ever invented or used, but did show that the plaintiff had several months' experience in such business, and in coupling cars similarly loaded, and had ample time to examine how the car was loaded and its mode of coupling, and it appearing the accident was the result of his own want of proper care, it was *held*, that a recovery against the company could not be sustained.

2. **Master and servant**—*servant takes ordinary risks.* Where an employment is attended with danger, a servant engaging in it assumes the hazards of the ordinary perils which are incident to it, and if he receives injury from an accident, which is an ordinary peril of the service undertaken by him, he can not recover damages for such injury.

Writ of Error to the Circuit Court of Sangamon county; the Hon. Charles S. Zane, Judge, presiding.

This was an action against the railroad company, to recover for a personal injury received by the plaintiff in coupling two cars upon the road of the defendant. The plaintiff recovered, and the defendant brings this writ of error.

The circumstances of the injury were, that the plaintiff was employed as a switchman in the yard of the railroad company, at Springfield. On the night of the 2d of May, 1874, he was engaged in making up trains. A freight train came in from the west, in which was a flat-car belonging to the Indianapolis, Lafayette and Cincinnati railroad. It was loaded with old iron rails, on the way to the rolling mills at Springfield. This car was to be attached to a caboose, drawn by another engine, by which it was to be taken to the rolling mill. The car was started from the first train on a switch track, in the direction

of the caboose to which it was to be coupled. The coupling-bars of this car and of the caboose were of different heights, so that it was necessary to join them together with a crooked link. The railroad iron on the flat-car projected a foot and a half or more over the ends of the car. There were dead-woods, sometimes called "bumpers," on the flat-car, but none on the caboose—the dead-woods being timbers, about eight inches square, which project on each side of the draw-bar, to protect it. The plaintiff stooped down to make the coupling, and his hand was caught between the bars and crushed, and his leg, also, was injured.

There are two counts in the declaration. The first alleges, that the injury occurred by reason of the negligence of the defendant in providing unsafe dead-woods and unsuitable and unsafe draw-bars. The second count charges, that the injury arose from the defective and careless loading of the railroad iron, in its projecting over the ends of the car.

In respect of the manner in which the flat-car was loaded, the plaintiff testifies that the rails projected over the end of the car eighteen inches, if not further; that if the rails had not projected, he would have seen the difficulty of coupling, and would not have attempted it; that he had been in the employ of defendant as a switchman at this yard for six or seven months prior to the accident; that cars not unfrequently came in to be switched having "dead-woods" like the one here, and with draw-bars of uneven heights, and that cars had frequently come in there before, loaded as this one was, with old iron projecting over the end of the car; that he discovered the improper loading just as the car was coming toward him to be coupled; that he was standing, with his lantern, at the end of the caboose to which it was to be coupled, as the car approached; that it was about six feet off when he discovered the improper loading; that the car was coming slowly. Other testimony showed, that the car was about twenty-eight feet long; that the rails projected at both ends; that old rails are of different lengths, from thirty feet down; that old railroad

iron is a common article of freight, shipped over the road frequently, and generally projects over the cars, this resulting sometimes from irregular loading or jolting by transportation, and sometimes the rails are longer than the cars; that different roads have differently constructed cars, varying in height as to draw-bars, and that cars from other roads come on to and are handled on defendant's road which vary in height of draw-bars from those of defendant's road; that when the draw-bars of connecting cars are not on the same level, a crooked link is used to make the coupling; that there is danger in coupling with any kind, but the most danger in coupling with a crooked link.

Messrs. Hay, Greene & Littler, for the plaintiff in error.

Messrs. John M. & John Mayo Palmer, for the defendant in error.

Mr. Justice Sheldon delivered the opinion of the Court:

We can discover in the evidence in this case no ground of liability of the defendant. There is no testimony whatever to show any defect in the construction of the dead-woods or the draw-bars, as alleged in the first count of the declaration, nor is it pretended that any better or safer mode of coupling was ever invented or used anywhere. The proof does not sustain the allegation on this score.

There is nothing here appearing, in respect of the mode of the coupling or the condition of the cars to be coupled, which was not of frequent and ordinary occurrence in the transaction of the business in which the plaintiff was engaged. The accident with which he met was but an ordinary peril of the service which he had undertaken. The business of the employment was attended with danger, and upon entering into it plaintiff assumed the hazard of the ordinary perils which were incidental to it. We do not see why the casualty in question is not one which is to be held as having been in the contem-

plation of plaintiff as liable to happen, and which he took the risk of when he engaged to enter into the employment.

What befell the plaintiff, too, must be regarded as owing to his own want of proper care. He, evidently, did not exercise the care and caution which the situation required. If, as he says, he could not see the position of the cross-bars, and the consequent difficulty of coupling, because of the projecting iron, wherefore he got injured, the fault was his own, in not ascertaining the condition of the cross-bars before attempting the coupling. He had full opportunity. It was in the yard, where there was no hurry—nothing to prevent his taking all the time for examination he required. From his experience as a switchman in the yard, and the frequent coming in of cars thus constructed from other roads, he had reason to suppose that the car in question was liable to have a draw-bar in the situation it was here, and it was his plain duty to examine and ascertain, as he safely might have done, what was the condition of the car in this respect before venturing upon the coupling. The circumstance of the projecting iron hindering the sight of the condition of the car, did not excuse him from taking the trouble to ascertain the fact of its condition, as he might have done.

Perceiving no cause of action here, the judgment is reversed and the cause remanded.

*Judgment reversed.*