HAUGH, ADM'R, v. THE CHICAGO, ROCK ISLAND & PACIFIC R'Y CO.

1. **Railroads:** INJURY TO EMPLOYE THROUGH IMPROPERLY LOADED CAR: LIABILITY OF COMPANY. A car had been loaded with lumber by K. & Son, lumber merchants, for shipment over defendant's road. The car was improperly loaded in this, that the lumber projected too far over the end of the car. K. & Son had given the company notice, in accordance with its custom, that the car was ready, and plaintiff's intestate and another, both yardmen, were directed by the company to bring the car from the side track and attach it to the train. This order was peremptory, and was given at the last moment before the train was to move, and it was night. Plaintiff's intestate was himself controlling the movements of the engine by signals, and when it had approached to within a short distance of the car, he mounted the foot-board of the

tender, from which point he saw the car only as he approached it, by the light of his lantern. He was caught between the projecting lumber and the tender, and was so injured that he died. *Held*, (1) that the company was responsible for the improper way in which the car was loaded, the same as if it had been loaded by its employes, and (2) that plaintiff's intestate could not be charged with contributory negligence, under the circumstances, in not thoroughly examining the car before attempting to couple it in the way he did, but that he had a right to presume that the car was properly loaded for safe handling and transportation.

*Appeal from Scott District Court.*

FRIDAY, OCTOBER 21.

ACTION for a personal injury to the plaintiff's intestate, Dennis Haugh, while engaged as the employe of the defendant in coupling cars. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendant appeals.

*Cook & Dodge*, for appellant.

*Gannon & McGuirk*, for appellee.

ADAMS, CH. J.—On the 30th of August, 1884, the plaintiff's intestate, Dennis Haugh, was killed while attempting to couple to the defendant's train a car loaded with lumber. The accident occurred by reason of the fact that the lumber was so loaded as to project too far forward. Haugh approached the loaded car riding upon the foot-board fixed across the rear end of the tender, and was caught between the projecting lumber and the tender. He was himself controlling the movement of the engine, through signals to the engineer, and no fault is chargeable to the latter. The plaintiff contends that the company was responsible for the improper way in which the lumber was loaded; and the company contends that the deceased was negligent in not discovering that the lumber was improperly loaded, and in attempting to make the coupling in the position in which he was. The loaded car stood upon a side track in the city of Davenport. It had

been loaded by the owners of the lumber, Keater & Son, a firm of lumber merchants. They had given the company the usual notice that the car was ready. On the night of the accident the deceased and one Stapleton, both engaged as yardmen, were directed to bring the car from the side track, and the accident occurred in the attempted execution of this order.

Several questions are discussed, but if a certain instruction given by the court is correct, it appears to us that there is no error in the other matters complained of. That instruction is in these words: "No question is made under the evidence but that the car in question was loaded by Keater & Son at their own yard, said car being sent there for that purpose in accordance with a common custom, which custom also required the defendant to send for the car and put it into the train when it was loaded. From the standpoint of the law, it makes no difference under the circumstances whether it was in fact loaded by men in the employ or pay of the defendant or not; it was essentially the act of the defendant, and stands in precisely the same situation as if actually loaded by men in the pay of the defendant." The giving of this instruction is assigned as error. The instruction proceeds upon the theory that the company owed the deceased the duty of seeing that the car was properly loaded, so far as the safety of the deceased was concerned, and that it must be deemed to have adopted the acts of Keater & Son in the loading of the car. The company denies that it owed the deceased such duty, and denies that it was responsible for the manner in which the car was loaded. It admits that no car loaded as this was should be taken into the train, but its position is that it can act only through employes, and that the deceased was the sole employe charged with the duty of discovering whether the car was properly loaded or not.

A large amount of evidence was introduced tending to show that the deceased was by virtue of his employment and mode of doing business charged with some duty in respect

to the examination of the car and the manner in which it was loaded. It was also shown that the company did not have an inspection made of the cars, loaded under similar circumstances, until the yardmen were sent to bring them from the side track. But, in our opinion, the instruction given is not inconsistent with such evidence. Every employe must keep his eyes open, and exercise reasonable care to guard against danger to himself. Some examination of all that he has to do with may without question be required of him, if it is practicable for him to make it, and this is so notwithstanding the company may have owed him the duty of making a prior examination. We do not therefore attach much importance to the evidence as to the duty of the deceased to examine the car, and the way it was loaded, before attempting to couple to it. The company might have set up this claim without evidence, because this duty would be imposed by law from the very nature of his employment. He was bound to exercise reasonable care. But what would be reasonable care would be greater or less according to circumstances. He of course saw the car and saw the lumber, but he did not go quite to the car before mounting the footboard of the tender, and he saw the car only as he approached it, and by the light of his lantern which he held in his hand. If he had appreciated his danger, he could by a signal have stopped the engine, which was moving very slowly. It may be that a man of ordinary prudence would have been more watchful, but this was a question for the jury. In determining it they might, we think, properly consider that he had a right to assume that the company, through some one, had examined the car, and the way it was loaded.

We arrive at this conclusion partly from the character of the order itself. It was an unqualified order to bring out the car. It carried upon its face the implication that the company considered the car ready to be brought out. Its unqualified character is not consistent with the idea that the deceased was charged with the primary and sole duty of

determining whether it was ready to be brought out. Besides, it was given at the last minute. The car was to be put immediately into the train for transportation. We do not understand it to be claimed that the car could have been reloaded and put into that train. The commonest business principles would suggest that the car should have been examined in time to enable it to go in the train, and with the dispatch which the shippers desired. We think that the deceased, in the absence of any express information to the contrary, had a right to take this view of the situation, and that the care and diligence which could be required of him should be measured by such fact. While he was bound to look at the car and lumber, he was not bound to make the strict examination that he would have been if he had been told that he was to make the primary and sole examination. Under this view it appears to us that the instruction set out is correct, and that there is no error in the other rulings complained of.

AFFIRMED.