JACKSONVILLE, TAMPA AND KEY WEST RAILWAY COMPANY, APPELLANT, VS. JOSEPH GALVIN, APPELLEE.

1. A declaration against a railroad corporation alleging that the defendant company unsafely and negligently loaded a certain car upon its railroad with railroad iron so that the bars projected a considerable distance over the end of said car, and that it was negligently accepted by defendant company for transportation when in an unsafe condition, and unfit for the purpose of coupling, which was known to defendant, but of

which plaintiff, a brakeman employed on defendant's train to couple cars, was ignorant, and by due care could not have known, and by means whereof said plaintiff was injured while attempting to couple said car, is not amenable to a demurrer, on the ground that the injury was caused by the acts of fellow servants of plaintiff.

2. A brakeman employed by a railroad company to couple cars on its railroad assumes the hazards of the ordinary perils which are incidental to such employment, and in a suit by such brakeman against the company to recover damages for injuries received in attempting to couple cars on account of alleged negligence in loading a car to be coupled, and in negligently accepting a car to be coupled, when the same was in an unsafe condition, a charge of the court to the jury that excludes the right to consider such a coupling as coming within the ordinary hazards and risks of his employment, is erroneous.

3. The instructions of the court must be confined to the issues made by the pleading, and it is error for the trial court to instruct the jury that they may base their verdict in favor of plaintiff upon a cause of action however meritorious or satisfactorily proved, that is substantially different from that which he has alleged

Appeal from the Circuit Court for Duval county.

## STATEMENT.

The appellee, Galvin, sued the appellant, a railroad corporation, in the Duval Circuit Court, for personal injuries received by the alleged negligence of said corporation. The allegations of the declaration, as to the cause of action, are as follows: "That the plaintiff (appellee here) was employed by the defendant (appellant) as brakeman, to couple cars for the defendant upon its said railway, and upon the 26th day of November, 1885, at Palatka, in Putnam county, said

State, on defendant's said railway being so employed, a certain one of said cars was coupled, or attempted to be coupled, by plaintiff, which, by the negligence and default of defendant, had been loaded unsafely and negligently, and was so received and accepted by defendant for coupling and transportation, and was in an unsafe condition and unfit for the purpose of coupling, which the defendant well knew, but of which the plaintiff was ignorant, and by due care could not have known, and by reason of the premises, whilst the plaintiff was so employed as such brakeman as aforesaid upon said railway at said place, defendant's railroad locomotive engine and train of cars attached thereto, driven and conducted by their servants, was driven to said car to be coupled thereto when the said car so negligently and unsafely loaded as aforesaid, being so negligently and unsafely loaded with railroad iron that the bars projected a considerable distance over the end of said car, thereby leaving so little space between said car sought to be coupled, and the engine and train of cars to which said car was sought to be coupled, that plaintiff was mashed and squeezed between said cars, so sought to be coupled, and said engine and train of cars attached thereto, to which said car was sought to be coupled, and his collar bone was broken, and one of his hands broken, and he was permanently injured and rendered unfit for work, to the damage of plaintiff $10,000, and therefore he brings suit and claims damages in the sum of $10,000.'' The summons was served upon the superintendent of the defendant company in Duval county, Florida.

The railroad corporation interposed a demurrer to the declaration on the ground that the alleged injury was caused by the acts of fellow servants of plaintiff, and for which defendant corporation is not liable. The demurrer was overruled, and said defendant plead the general issue, that the alleged injury was caused by the acts of fellow servants, and that plaintiff by his own carelessness and negligence contributed to said injuries. A trial of the cause resulted in a verdict and judgment for plaintiff below for $2,472, from which an appeal is prosecuted to this court.

The other facts of the case sufficiently appear in the opinion of the court.

*J. R. Parrott* for Appellant.

*Frank W. Pope* for Appellee.

MABRY, J. :

The first error assigned is the overruling of defendant's demurrer to the declaration. There is no error in the decision of the court overruling this demurrer. The declaration in substance alleges that the defendant corporation unsafely and negligently loaded a certain car upon its railroad with railroad iron so that the bars projected a considerable distance over the end of said car, and that defendant negligently received and accepted said car for coupling and transportation ; that said car was in an unsafe condition and unfit for the purpose of coupling, which was well known to said

defendant, but of which the plaintiff was ignorant, and by due care could not have known ; that plaintiff was employed by defendant to couple cars on its road, and while so employed, at Palatka, in Putnam county, Florida, on the 26th day of November, 1885, coupled, or attempted to couple, said car so negligently and unsafely loaded, and received and accepted by defendant for coupling and transportation ; that defendant's locomotive engine, with a train of cars attached thereto, was driven by its servants to said loaded car to be coupled, and that the projection of said railroad iron over the end of said car left so little space between the said car sought to be coupled, and the train of cars attached to the said engine that plaintiff was mashed between said cars and received the alleged injuries. The allegation is that the defendant corporation negligently loaded the car in the manner specified, and negligently accepted it for coupling and transportation when in an unsafe condition, and that in consequence thereof plaintiff was damaged.

The defendant cannot under a demurrer to this declaration avail itself of an exemption from liability on the ground that it is not chargeable with the acts of plaintiff's fellow-servants. The declaration does not disclose what class of servants of defendant performed the acts alleged to have caused the injury. The averment is that the defendant loaded and accepted the car, and not only so, but it is alleged that the defendant negligently loaded and accepted the car for coupling and transportation. The demurrer admits these allegations to be true, and if true, they show a cause of

action against the defendant.    The demurrer was properly overruled.

Various assignments of error are predicated upon exceptions taken to instructions given for plaintiff, and refused to defendant, in the trial court.    Before considering these assignments of error we will refer to the testimony on the point of defendant's liability.    The plaintiff, at the time of the accident, was employed by the defendant company as brakeman on one of its freight trains.    His account of the occurrence is as follows :  "On November 26th we were backing down on the side track to get at a car of iron.    They gave me the keys and told me to get out that car, and just as he gave me the keys he said 'I will go myself.'    I was on one side and he on the other side ; we both came down to the switch, and when we came to the switch I jumped off to let the engine in, and we went back by the main line and against the car to couple on.    He hallooed to the engineer to come back, and the engineer came back very carefully, but being dark I could not see at all till I got up to the car.    When I got up to the car, it came back and crushed me down and I did not know anything more."    The testimony shows that the defendant company, at the time of the injury, was engaged in extending its railroad beyond the point of the accident, and the freight train on which plaintiff was employed as brakeman was daily hauling cars loaded with lumber and iron to a point near where the road was being constructed.    On the day of the accident a flat car was loaded with railroad

iron by a gang of men working with a construction train of defendant, and placed on a side track at Palatka for the freight train to pick up and haul to the work on the road. The construction train was under the control of a conductor, whose duty it was to have the cars loaded. The iron on the flat car projected over one and eighteen or twenty inches, and the car was about the length of or a little longer than the iron. It appears from the testimony of the freight conductor, who was examined as a witness for defendant, that it was his duty to inspect the cars to be taken into his train, and that he received this car after he saw the iron projecting over the end. He states, however, that he was daily hauling lumber and iron for the construction of the road, and it was very common at this time to find cars loaded with lumber and iron projecting over the ends. A witness, who was at the time a brakeman on the construction train, and introduced by plaintiff, testified that he could not say it was a general thing for the company to load trains in that way, but that the flat cars had brakes on them at one end, set back eighteen or twenty inches, and in loading iron the conductor would tell the men to push it back so as not to hit the brakes, and this would cause a projection over the other end. This witness also states that the iron could have been loaded so as to avoid the brakes and still not project over the end. The plaintiff says that his train was engaged in daily hauling cars loaded with lumber and iron, but he never saw any before projecting over the ends of the cars. At the time of the accident plaintiff had been in

the service of the company two or three weeks, but he states that he was an experienced brakeman, and had been engaged in this business on other roads two or three years. The freight train on which plaintiff was employed arrived in Palatka about dark, and the accident occurred between half-past six and seven o'clock at night, in attempting to couple on the car loaded with iron. The engine, to which was attached a flat loaded with lumber, was backed in on the side track to connect with the iron car, and the proof is that the engine went back very carefully. The conductor directed the plaintiff to couple the car, and he went between them for this purpose, and was mashed by the projecting iron. At the time he had a lantern which was giving good light, but he says he did not see that the iron projected until it was too late, and he was caught. The conductor says he saw the iron projecting, and hallooed to plaintiff to look out for himself, but did not call attention to the fact that the iron projected. His reason for calling to plaintiff to look out for himself, he says, was because he was naturally apt to be careless, and it was a bad coupling to make. The engineer, who was examined for defendant, says that he saw the iron projecting over the end of the car, and told plaintiff not to stand up to make the couple. He knows plaintiff heard him, because he made reply that it was his business, or something like that. Plaintiff says he heard none of this, and did not see his danger until it was too late. He says he acted as carefully as he could, and went between the cars on the side that he thought would be

open, as the curve was coming that way. He stood up straight to make the coupling, and he says he could not have coupled the car in any other way, and that was the only way to couple cars. The deadwoods between the cars were long enough for a man to stand between them and turn any way, and the bumpers were one and one-fourth to one and one-half feet long. One witness for plaintiff testified that plaintiff could not have seen the projection of the iron from where he was standing and attempting to couple the car, and that he could not have coupled in any other way unless he had been possessed of a stick or had been looking to see if the iron was projecting. He says further that coupling can be made by going underneath, and this way is safer, but a brakeman must have his time, and to brake this way he cannot perform his work properly. The conductor testified that he had had ten or twelve years' experience in railroad business, and his invariable rule as brakeman, when coupling at night, was to get down below, in order to avoid mashing, and that a brakeman always runs some risk of getting mashed unless he gets down when coupling without a stick at night. He says it was his custom to instruct brakemen how to couple, but does not remember giving any instructions to plaintiff. The engineer says his first work in railroad business was coupling cars, and the proper way to couple after dark was "under," and then the cars can go together and not hurt the coupler, because he is under, and out of

the way. The other brakeman on the train with plaintiff testified that he was not present when the accident happened, but went to the scene soon thereafter. He says the proper way to couple after night is by getting underneath and reaching up, so that the head will be clear of the platform, and that witness coupled this car after the accident in this way without getting hurt. Other testimony in the record relates to the character and extent of the injuries received by plaintiff.

Among other charges for the plaintiff, the Circuit Judge instructed the jury as follows : " If you believe from the evidence that a car of railroad iron was loaded under the direction and supervision of a conductor of a construction train charged with that duty by the defendant railroad company, and that the same was loaded so that the bars of iron projected over the end of the car, and that with ordinary care in loading, such projection would have been obviated, and that in such condition it was, under the direction of such conductor, placed on a track of defendant's railway for the purpose of being transported by a freight train of defendant's railroad company, and that the plaintiff was a brakeman on said freight train, and that in obedience to the orders of the conductor of said train he proceeded in the night time with due care to couple said cars and was injured by said iron projecting over said car, without fault on his part, while attempting to couple said car, then your verdict should be for the plaintiff."

"When a brakeman enters the employment of a railroad company he only risks the dangers which ordinarily attend such employment, and not risks which are directly and only caused by an omission of duty on the part of his employer; and if you believe from the evidence that the plaintiff was injured without fault on his part, by railroad iron projecting over the car, while attempting to couple the car, in the line of his duty and in obedience to the order of his superior, in the night time, and without knowledge of the danger, if such danger was known to his superior, then it is not a risk ordinarily incident to his employment and which he assumed to take, but it is an omission of duty on the part of the defendant, and for which the defendant is liable to plaintiff in whatever damages may have been sustained by him from such injury." These instructions were duly excepted to by the defendant.

By referring to the declaration it will be seen that plaintiff bases his cause of action upon the alleged negligence and default of defendant in loading a car with railroad iron so that the rails projected over the end, and in receiving said car for coupling and transportation in an unsafe and unfit condition. If the declaration can be construed to allege any defect or imperfection in the car other than the way in which the iron was placed on it, it is clear from the evidence that no such defect was shown either in the car or any other machinery or implements with which plaintiff was em-

ployed to work. The improper arrangement of the iron on the car can not be classed under the head of defective machinery, whatever may be defendant's liability by reason thereof on other grounds. The liability of defendant must rest upon the loading of the car so that the bars of iron projecting over the end eighteen or twenty inches, or in accepting the car so loaded for coupling and transportation. The accident, it must be remembered, occurred not while the car was being loaded or placed on the side track, but in attempting to couple it on to a train to be carried forward on the road. According to the first charge above referred to, the loading of the car under the supervision of a conductor in charge of defendant's construction train with iron, so that the bars projected over the end, which could have been avoided by ordinary care and placing the same on the side track of defendant's road for transportation by its freight train, impose a liability upon defendant for an injury received by a brakeman on the freight train in attempting to couple said car at night by direction of his conductor. The charge necessarily excludes the right of the jury to consider such a coupling as coming within the ordinary hazards and risks of the employment which a brakeman assumes in his engagement with the company, because they are instructed to find for plaintiff if they believe from the evidence that a car was so loaded and placed on the side track for transportation, and that plaintiff was injured in coupling the same

while acting within the line of his duty without fault. It was the duty of plaintiff to couple cars on the road of defendant, and when the accident occurred he was acting within the line of his employment. By voluntarily engaging in the hazardous business of coupling cars he assumed the ordinary risks and dangers incident to such business. The authorities are clear on this point. Does the loading of the car in the manner shown by the testimony, and its acceptance for transportation, take the case out of this rule? In Toledo, Wabash & Western Ry. Co. vs. Black, 88 Ill., 112, a brakeman sued for injuries received from alleged defective and careless loading of railroad iron, so that it projected over the end of the car. . The rails projected over the end eighteen inches, if not further, and plaintiff testified that if the rails had not projected he would have seen the difficulty of coupling, and would not have attempted it. It appears that he had been in the employment of the defendant company as switchman at its yard six or seven months prior to the accident, and that cars had frequently come in there before loaded as the one in question was with old iron projecting over the end of the cars. The plaintiff stated that he discovered the improper loading just as the car to be coupled was coming towards him, about six feet off, and that he was standing with his lantern, at the end of the caboose, to which it was to be coupled, and the car was coming slowly. It also appeared that the car was about twenty-eight feet long and the rails pro-

jected over both ends ; that old rails are of different lengths and was a common article of freight shipped over the road frequently, and generally projected over the ends of the cars ; that this resulted sometimes from irregular loading or jolting by transportation, and sometimes the rails were longer than the cars. The plaintiff stooped down to make the coupling and his hand was caught between the iron bars and crushed, and his leg was also injured.  It was held that the plaintiff could not recover.   The court said : "The accident with which he met was but an ordinary peril of the service which he had undertaken.   The business of the employment was attended with danger, and upon entering into it plaintiff assumed the hazard of the ordinary perils which are incidental to it.   We do not see why the casualty in question is not one which is to be held as having been in the contemplation of plaintiff as liable to happen, and which he took the risk of when he engaged to enter into the employment."    In Louisville & Nashville R. R. Co. vs. Gower, 85 Tenn., 465, a brakeman on a rail oad recovered a verdict for injuries received in coupling cars. In this case a car loaded with lumber had been taken into a train, and at a station two flat cars were taken out of the train and placed on a side track, which necessitated the coupling of the lumber car with a box car.   It was the duty of the plaintiff to make the coupling, which was done without special order.   He stood at one end of the box car, signalled the engineer

to back to the car, which was carefully done. When within a few feet of the box car the plaintiff observed that the plank projected over the end of the lumber car, and that it was necessary for him to stoop to avoid it in entering between the cars to make the coupling. He entered in this way and made the coupling, but on account of some difficulty in getting the coupling pin into the draw-head he raised his head and was caught between the box car and the projecting lumber and badly injured. The trial court instructed the jury, in substance, that the reception of a car so loaded that the lumber projected eighteen inches over the end of it, was negligence on the part of the company, and that it was an extraordinary hazard to which the company must not subject its employes. This was declared to be error. The opinion states that: It may be extra-hazardous in the sense that it is not a coupling ordinarily or frequently required ; but it is one incident to the duties of the place, and not more hazardous, as a matter of law, than he stipulates to perform on the occasion, however rare or frequent, where such couplings become necessary in the variety of shipments made to meet the demands and necessities of trade and transportation. Lumber of all kinds, iron, steel and finished structures must often necessarily be transported on cars of shorter length than the material transported. * * To hold that such a service is not to be anticipated by a railroad employe as occasional, incidental, though extremely hazardous duty to be

performed, would be to do so in manifest disregard of the demands of the age upon transportation lines and their common and well understood service in conformity to such requirements." The facts in the case of Northern Central Ry. Co. vs. Husson, 101 Penn. St., 1, were that Husson was in the employment of the railway company as a hand on one of its gravel trains engaged in hauling ballast, earth, railroad iron, bridge irons, bridge timbers and other material required in constructing a roadbed. It was Husson's duty to assist in coupling the cars, and he assisted one morning in making up a train consisting of four cars loaded with large pieces of bridge iron in such a manner that the ends extended beyond the ends of the cars. When the bumpers or deadwoods of the cars were together the distance between the projecting ends of the iron was about five inches. While Husson was coupling the cars his head was caught and crushed between the ends of the iron so that he died. His widow and child brought suit to recover damages for his death occasioned by the alleged negligence of defendant. The company had a regulation, which was known to Husson, that persons in coupling cars together should stoop below and make the coupling by reaching up. It was held that the risk run by decedent in coupling the cars was ordinarily incident to his employment, and also that he failed to take ordinary care in making the coupling. For a further discussion of the principle of law controlling cases like the one at bar, see

Atchison, Topeka & Santa Fe R. R. Co. vs. Plunket, 25 Kansas, 188 ; Brown vs. Atchison, Topeka & Santa Fe R. R. Co., 31 Kansas, 1 ; Day vs. Toledo, Canada Southern & Detroit Ry. Co., 42 Mich., 523 ; Patterson's Railway Accident Law, sec. 316.

There are two cases in Iowa which hold a different doctrine ; one is in the case of Hough vs. Chicago, R. I. & P. Ry. Co., 73 Iowa, 66 ; 35 N. W. Rep., 116, cited by counsel for appellee, and the other is reported in 36 Iowa. It appears that they have a statute in this State imposing liability upon railroad corporations for all damages sustained by any persons, including employes, in consequence of any neglect of its agents, or mismanagement of any of its employes. How far these decisions have been influenced by the statute does not appear, as the decision in Hough's case makes no reference to any statute.

In the case at bar the plaintiff was twenty-eight years old, and an experienced brakeman. The train on which he was employed was engaged daily in hauling cars loaded with railroad iron and lumber for railroad construction. The conductor testified that it was very common for the iron and lumber to project over the ends of the cars. The plaintiff admits the train was daily hauling lumber and iron, but says he never saw any before the accident projecting over the ends of the cars. Under the charge of the court to the jury, they were precluded from finding that the injury re-

sulted from the ordinary risks and hazards incident to plaintiff's employment, and in this respect it was erroneous, and prejudicial to the defendant.

The second instruction was also calculated to mislead the jury in considering the real question involved in the case. In so far as this charge can be construed as a direction to the jury that the coupling of a car loaded with iron projecting over the end is not such a danger and risk as ordinarily appertain to plaintiff's employment, it would not differ from the first charge considered. In our opinion, however, the second charge changes the basis of a verdict from that presented in the first, and puts it upon the action of a superior officer with knowledge of an extra hazardous coupling, directing the plaintiff, who was a brakeman without knowledge of the extra danger, to make the coupling in the night time without informing him of this danger. This instruction directing the jury that if plaintiff was injured, without fault on his part, by railroad iron projecting over the end of the car which he was attempting to couple in the night, in obedience to the orders of a superior who knew the danger, and which was not known to plaintiff, then the risk in coupling the car was one not ordinarily incident to plaintiff's employment. The negligence of defendant, upon which plaintiff relied in his declaration, was in loading a car with railroad iron projecting over the end, and in receiving such car for transportation. The jury was directed to find for plaintiff if they believed

that a superior, with knowledge of danger in making a coupling, directed the plaintiff to perform this duty at night when he was ignorant of the danger. There are no allegations in the declaration to justify a finding on this particular phase of the charge. We do not hold that the company would be exempt from liability in a case where a conductor, with knowledge of a dangerous coupling, directed a brakeman to make it in the dark without informing him of the danger, when he did not know of it. What would be the rule in such a case we need not say, because the declaration before us does not allege it. We held in the case of Parrish vs. Pensacola & Atlantic R. R. Co., 28 Fla., 251 ; 9 South. Rep., 696, that there could be no recovery upon a cause of action, however meritorious it may be, or however satisfactorily proved, that is in substance variant from that which is pleaded by the plaintiff. And in J., T. & K. W. Ry. Co. vs. Neff, 28 Fla., 373 ; 9 South. Rep., 653, we held that the instructions of the court to the jury must be confined to the issues made by the pleadings. In the case now under consideration we think the jury was clearly misled, to the prejudice of defendant, by the charges of the court as to the real question involved, and a new trial should be granted. It is well to note that the present case arose before the passage of Chapter 3744, Laws of Florida, and no question is presented under this statute.

There are other exceptions in the record to charges given and refused by the court, but we do not consider them, for the reason that what is stated above covers the question presented by the declaration.

The judgment of the court below is reversed, and a new trial awarded.