## Illinois Central Railroad Company v. Frank Harris.

1. RAILROADS—*Defective Cars—Notice.*—If a car becomes defective by use in the service of the company, notice thereof is necessary to fix a liability; but if a defectively constructed car is used notice is not necessary, and this rule applies to foreign cars furnished the servants of a railroad company to operate.

2. NEGLIGENCE—*Actionable Cause and Effect.*—There must be the relation of cause and effect to constitute actionable negligence. There must not only be negligence in fact but it must have been the proximate cause of the injury, without intervening negligence on the part of the plaintiff, or lack of exercise of ordinary care; for the harm which one brings upon himself he is to be considered as not having received.

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of Jackson County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Heard in this court at the February term, 1894. Reversed and remanded. Opinion filed June 23, 1894.

The opinion states the case.

W. W. BARR and WILLIAM H. GREEN, attorneys for appellant.

WILLIAM A. SCHWARTZ, attorney for appellee.

Mr. Presiding Justice Sample delivered the opinion of the Court.

The appellee was a brakeman in the employ of appellant, and while in the performance of his duty as such, on the 13th day of December, 1892, at Ashley, Illinois, his left hand was caught between the deadwoods of two double buffer cars, as he was in the act of coupling them together, and crushed so that his hand and a part of his arm had to be amputated. He recovered a verdict of $8,000, which was sustained by the court.

A summary of the facts is, that the two cars referred to were foreign cars, having been on appellant's road about two days before the accident, and were brought from Chicago to Champaign by one crew, from there taken to Centralia by another, and from the latter place were being taken to Mound City by a crew, of which appellee was a member, in a train consisting of about forty cars. At Centralia, Burns, an associate brakeman of appellee, discovered the south draw-head of the north one of the two cars was horizontally split on both sides of the link aperture, which was opened about two inches. Because of this, he procured a long pin, and therewith replaced a shorter pin by which these cars had been coupled. When the train arrived at Ashley, some twelve miles south of Centralia, the pin that was in the south draw-head of the north one of the said two cars came out, which cut the train in two parts about eight cars from the engine. The appellee discovered this fact, signaled the engineer to stop, walked forward on the cars to the south end of box car 9282, saw that the pin at that end of the car was gone, climbed down the car at that end, and without looking to observe the cause of the pin coming out, went forward to the engine to get another pin, then walked back, signaling the engineer to push back that part of the train so as to make a coupling. When the cars were about four feet apart he " stepped in between them," and in his language, " placed my pin, and as the draw-bars came together, I had no time to notice the draw-bars, I took the link in my left hand and made the coupling, and when I went

to drop my hand out of the way of the buffers, it would not drop, and they came together and smashed my wrist off."

He had on gloves, the day being cold, and states that it seems to him that somewhere along the edge of his thumb, his glove caught on slivers of the fractured draw-head, so that he could not drop his hand out of the way of the dead-woods or buffers.

The declaration alleges, in the first two counts, that his hand caught in the slivers of the draw-head of the *north* car, and the other car was driven upon him while in that condition, whereby he was injured. The third count is based on insufficient "fillers" in the draw-bars of the said two cars, whereby the draw-bars were permitted to recede, so that the buffers or deadwoods came together and crushed his hand.

It appears that the draw-heads of both of said cars were split at the ends when coupled together.

The train was headed south, and appellee stepped in, on the east side, to make the coupling, which would bring his left side to the south one of the said two cars. " Q. And the split that was on the left-hand side caught your hand? A. Yes, sir." The evidence shows the draw-heads did recede so that the buffers of these two cars would come together, and several witnesses expressed the opinion this was caused by insufficient filling at the back end of the draw-bars. The evidence shows that double buffer cars are in common use on eastern roads, and are contained in almost every through train run on the appellant's road. It also shows the purpose of the buffers is to protect the draw-heads, and therefore are expected to come together. C., C. & St. L. Ry. Co. v. Dixon, 49 Ill. App. 298. Generally the draw-bars project nearly as far as the buffers and the evidence makes it very questionable whether a prudent man can take the risk of their *not* coming together. The buffers on these cars were small cast iron pieces, about five or six inches square, situated about two and one-half inches on the right and left hand side of the draw-bars, with the lower part of the buffer below the top part of the draw-bar, not

quite covering, as appellee states, the draw-bars entirely, projecting almost even with the ends of the draw-bars.

The mere use of such cars with double buffers is not negligence, although all railroad men assert there is great danger in coupling them; but greater care is required. I., B. & W. R. R. Co. v. Flanigan, 77 Ill. 367; T., P. & W. Ry. Co. v. Black, 88 Ill. 112.

This case, on its facts, hinges on the care used by the appellee in making the coupling of such cars. He knew that such cars were used on the appellant's road. He had been in its employ for more than a year altogether, the last time only a few days before his injury. He had receipted for a written notice of the fact that he was liable "to meet and be called upon to work with and to couple double buffer cars." He also knew the fact from experience. He did not know the draw-bar would be split and splintered so as to catch his hand in making the coupling.

If, however, he had been making the coupling in a different way, and that way or method was the proper and safe one, he would not have been injured, can it be said the splinters were the primary cause of the accident, or that he was using proper care? The uniform testimony of brakemen is that it is dangerous to project the arm straight through to the draw-heads in coupling such cars as appellee did. Burns, the appellee's associate brakeman, testified that when he coupled them together at Centralia, he "got clear down under everything." He says that is the best and safest way, although it is evident he was not friendly to appellant, having quit the road under some disagreement. Every witness who testified on the subject, and there was quite a number, testified to the same thing. They all say to reach straight in is dangerous. It is said the coupling of such cars can be easily made by stooping slightly, so the arm may go below the buffers, by which method it is claimed there is no possibility of being hurt from the contact of the buffers. Flanigan case, *supra*, p. 369, holds: "It is proven, that with care cars with deadwood on both sides of the draw-bar may be operated with entire safety." The appel-

lee, when asked why he did not put his hand under the buffers, says, "I did not want to get my hand down in there. I would like to keep my hand where I could see it. Q. I will ask you if, as a matter of fact, you had done that when you attempted to couple the cars, you would not have gotten hurt? A. I don't know whether I would or not."

The second instruction given for the appellee was erroneous. It is as follows: "It would have been negligence on the part of the defendant to use car No. 9282 in the train, if said car or the draw-bar, draw-head or coupling were defective and unsafe, if the defendant knew said car or the draw-bar, or draw-head, or coupling thereto were defective and unsafe, or with the use of reasonable diligence could have ascertained the same to be defective and unsafe; and if you believe from the evidence, that said car, draw-bar, draw-head or coupling thereto were unsafe, and that the plaintiff was a brakeman on defendant's train, and that said car was in said train, and that the plaintiff was in the discharge of his duty as brakeman on said train, trying to make a coupling and using all due care for his personal safety, and was injured in consequence of said car, draw-bar, draw-head or coupling being defective and unsafe, then the plaintiff would be entitled to recover for the injury received." In the first place it predicates negligence, in its statement of the law, on the knowledge of appellant or its opportunity to know the defective condition of the cars, and therein its hypothesis ignores that element as a ground of liability. The theory of the instruction is as to the use of a defective car by appellant and not as to supplying for use an unsafe car. If a car becomes defective by use in service of a company against whom complaint is made, notice thereof is necessary to a liability, while if a defectively constructed car is used notice is not necessary; and this rule applies to foreign cars furnished the servants of a railroad company to operate. C., B. & Q. R. R. Co. v. Avery, 109 Ill. 314; Jack v. Dalen, 137 Ill. 129.

The instruction is thought to be erroneous and misleading in another respect. It assumes to state in the first part

of the instruction what, as a matter of law, would constitute negligence, and impliedly create a liability, viz., the use of car No. 9282, if in any way defective and the company knew it. It was not negligence as to the appellee to use such car even if defective, unless such defect caused the injury. C., C., C. & St. L. Ry. Co. v. Dixon, 49 Ill. App. 299. There must be the relation of cause and effect, to constitute actionable negligence. It is also the law that " there must not only be negligence in fact, but it must have been the proximate cause of the injury " without intervening negligence on the part of the plaintiff or lack of exercise of ordinary care, for " the harm which one brings upon himself he is to be considered as not having received." C. & A. R. R. Co. v. Beeker, Adm., 71 Ill. 25.

The sharp issue in the case was whether the alleged iron splinters on the draw-heads were the cause of the injury, or whether the accident would not have happened notwithstanding such alleged negligence, owing to the fact that appellee projected his left arm straight in between the double buffers to make the coupling, which many witnesses introduced by appellant, testified he could not do and hope to escape injury.

The judgment is reversed and the cause remanded.