## John J. Murphy v. The Lake Shore & M. S. Ry. Co.

1. RAILROAD COMPANIES—*Use of Car Couplers.*—It is not a question of law whether it be practicable and expedient for all railroads to use the same kind of coupling devices, and the most that the law requires is,

that every railroad company shall adopt such couplings as are found by experience to combine the greatest safety with practical use.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. Philip Stein, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed December 28, 1896.

Seth F. Crews, attorney for appellant.

Wm. McFadon, attorney for appellee.

Mr. Presiding Justice Shepard delivered the opinion of the Court.

The appellant was a switchman, working for the appellee in its Englewood yards, and while so employed received the injury for which he sued.

At the conclusion of the evidence for the appellant, as plaintiff, the jury, under the direction of the court, returned a verdict of not guilty, and this appeal has followed.

Appellant was injured while attempting to couple together two freight cars that were provided with coupling devices of dissimilar construction and different height.

It is not claimed that the coupling devices were incapable of being united, but that it was more dangerous work than if they had been of like construction and on a level. Nor does it appear that either coupler was out of order.

The additional count to the declaration alleged that the "Jenney" coupler, with which one of the cars was provided, was about four inches lower than such couplers usually are when upon a car, but there was no evidence to support the allegation. In that regard, the evidence was, merely, that the "Jenney" coupler was four inches lower than the "malleable" coupler which was on the other car—which fact, for all that the record shows, may be true of all "Jenney" couplers as compared with "malleable" ones; and there was no evidence that being in such relative position to the other coupler made either coupler in any proper sense, out of order, and this is true notwithstanding the appellant testified that he supposed the two couplers were

in good order, and that there was no mark indicating that they were not.

Appellant testified that there was less than four inches difference in the relative height of the slots of the two couplers, but did not state how much less.

From anything we can find in the evidence, we must regard that each of the two cars and their respective coupling devices were complete, and, in themselves, in perfect order, although not as well calculated for easy joining or coupling together as they would have been if the coupling device on each had been of the same pattern or kind.

But this latter circumstance does not of itself make a railway company liable to an injured switchman.

The evidence showed that the car provided with the "malleable" coupler belonged to the New York Central Railroad Company, while that having the "Jenney" belonged to the appellee. It is not a question of law whether it be practicable and expedient for all railroads to use the same kind of coupling devices, and the most that the law requires is, that every railroad company shall adopt such as are found "by experience to combine the greatest safety with practical use." T. W. & W. Ry. Co. v. Asbury, 84 Ill. 429.

There is no evidence that both the "malleable" and the "Jenney" were not approved and practical devices for car-coupling.

It was shown by the cross-examination of appellant that he had worked for twelve years as switchman for different railroads in Chicago, and that during all that time he had been in the habit of coupling cars having different coupling apparatus of varying heights.

Can, then, the appellant recover for an injury received by him in the discharge of his regular and familiar duties, when the apparatus which he was required to use was of an approved and practical kind, was familiar to him, and each part of which was perfect in itself?

We think the answer is plain that he can not.

The risk he took and from which he became injured, was

the ordinary risk of the service in which he was engaged. T., W. & W. Ry. Co. v. Black, 88 Ill. 112; I., B. & W. R. R. Co. v. Flanigan, 77 Ill. 365.

The sentiment of sympathy that we may privately indulge in because of the loss of the use of a hand by one of a class of men who are noted for the judgment and dexterity with which they perform their dangerous work, can not prevail over what we regard as being the settled law of the State, and we must affirm the judgment.