## Howard H. Willson et al. v. Jessie B. Logan.

### Gen. No. 13,691.

1. EVIDENCE—*what competent with respect to condition of machinery connected with accident.* Evidence with respect to the condition of a machine at which the plaintiff was injured should be confined to the condition of such machine at the time of the accident, and evidence as to such condition prior to the accident, given by one having no knowledge of its condition at the time of or immediately before the accident, is not competent.

2. NEGLIGENCE—*what constitutes actionable.* In order to constitute actionable negligence, it must appear that the act or omission complained of was the proximate cause of the injury in question; between such act or omission and the accident the relation of cause and effect must appear.

3. MASTER AND SERVANT—*when doctrine of assumed risk applies.* The doctrine of assumed risk will defeat a recovery by a servant who has approached within four months of her majority and who for months has worked at a machine and is injured thereat by a danger open and obvious, namely, that of getting the fingers between a shoe and a perpendicularly moving plate.

4. INSTRUCTIONS—*what error to refuse.* It is error to refuse instructions predicated upon the doctrine of assumed risk where the issue of assumed risk was raised by the evidence in the cause.

Action in case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the March term, 1907. Reversed and remanded. Opinion filed March 9, 1908.

**Statement by the Court.** The parties will be referred to in this opinion according to their titular designation in the trial court.

At the time of her injuries, December 21, 1901, plaintiff was seventeen years and eight months old, and had been in the employ of defendants nearly ten months. According to defendant Willson's testimony, when plaintiff applied for work she was accompanied by her sister, Mrs. Sheriff, who

was at that time in the employ of defendants and with whom Willson had previously had some talk in relation to plaintiff's being employed by them.   Willson testifies that he said to plaintiff at that time, "Jessie, did you come down to work?" to which she replied "Yes," and Willson said "All right," and thereupon she went to work and continued to work until injured.

The business of defendants is die cutting for the printing trade and label printing.   At the time of the accident there were two machines in use for "cutting dies" and "flattening eyelets."   The machines are referred to as new and old, the new machine having a brake appliance back of the shaft not possessed by the old, but in other material respects they were very much alike.   Plaintiff was first put to work at what is referred to as "table work," during which time she did not work with the machines, although she constantly carried to those who did materials with which they worked at the machines.   The so-called "table work" consisted in sorting tickets, labels and advertising cards, "stringing" them, and the placing of eyelets in advertising cards.   The machines were used for cutting out with dies advertising labels and cards, and for flattening eyelets, when eyelets were used.   The *modus operandi* of flattening eyelets seems from the evidence to be about as follows:   The eyelets are inserted by hand into holes punched in the cards for that purpose.   In this condition the cards are put upon the table of the machine, to the left of the machine operator, who from that table would handle the cards for flattening the eyelets with the machine, and to do so would place her foot upon the treadle of the machine, causing the upper part, composed of a square metal plate, to move up and down, the motive power being steam. This was so nicely adjusted that the plate fell to a distance sufficient to flatten the eyelet without damaging the card. The ascent and descent of this plate was rapid, and its setting in motion and stopping were regulated by the foot treadle. The top of the table underneath the descending part of the machine was a square iron plate not set into and flush with the top of the table, on the top of which was set a heavy flat

piece of iron weighing 32 pounds, termed a "shoe." The putting of the cards into the machine for the purpose of flattening the eyelets did not require an operator to place his or her fingers near the machine where the descending plate came down upon the "shoe" underneath it. At the time of the accident the edge of the "shoe" nearest plaintiff was so nearly directly under the corresponding edge of the descending plate that the difference in alignment did not exceed an inch and a half. The card which plaintiff was engaged in flattening eyelets in with the machine at the time of her injury, is in the record, and we have examined it, as also the model of the 32-pound iron plate which descended upon the shoe in the table beneath it. At times prior to the accident the machine referred to as "old" was out of order, causing the descending plate to stop at the terminus of its descent. It would not ascend again until readjusted.

When plaintiff first entered upon her employment with defendants their place of business was in the Caxton building, from from which, on December first following, they removed to 327 Dearborn street. Mrs. Sheriff, plaintiff's sister, left defendants' employ November 9th before the accident. One Fannie Latchell, who was a machine woman, left her employment in August, and plaintiff asked to be given the vacant place to work upon the machine. Part of the time from August to November 9th, plaintiff worked on the machine, and all the time from the latter date to the time of her injury. Mrs. Sheriff was working on a machine when she quit. Plaintiff denies this testimony but states that she worked on the machine infrequently and under protest on the day of the accident. Willson instructed plaintiff to be careful and keep her hands out of the machine, and on cross-examination testified that he saw her hold her hands under the "chuck" after he had warned her to keep her hands out. Ford testifies that when plaintiff was hurt he was watching her, and she was looking out of the window. Philip Cullen, the foreman who put her to work on the machine, testifies that she seemed pleased "to get on that work." Plaintiff returned to work for defendants in August

Willson v. Logan.

following her injuries, and continued until the January following. She quit one day and the sheriff served Willson with process in this action the next.

Plaintiff caught two fingers of her left hand in the machine as the plate descended upon the shoe in flattening the eyelets in the card referred to, which removed the fleshy tips and the nails of these two fingers.

A trial before the court with a jury resulted in a verdict for $1,250, upon which judgment was entered after overruling motions for a new trial and in arrest of judgment, to which rulings defendants preserved sufficient exceptions to call for our review of the record in this appeal.

The negligence averred in the declaration, and on which a right of recovery is predicated in the first count, is that the machine at which plaintiff was hurt was a dangerous one to work at; that she was unacquainted with the working of the machine or its attendant dangers; that defendants through their foreman, knowing the premises, ordered plaintiff to use and operate the machine; that while doing so, in the exercise of all due care, she was injured; and by the second count the negligence averred is in allowing the machine to be out of repair and unsafe to be used.

The errors assigned and argued for a reversal relate to the rulings of the court upon the evidence, variance between the proof and the averments of the declaration, in failing to direct a verdict for defendants, and errors in instructions to the jury.

ELA, GROVER & GRAVES, for appellants.

JOHAN WAAGE, for appellee; W. E. HUGHES, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The testimony of plaintiff's witness, Mrs. Louise Berquist, is clearly incompetent. While formerly in the employ of defendants, she had not been employed by them at any of the times when plaintiff worked there. Notwithstanding she

worked the machine and had knowledge of its condition, such working and knowledge were at a time previous to the time of appellee's employment and working upon the machine. The inquiry should have been directed to the condition of the machine at the time of the accident to plaintiff. Of this condition Mrs. Berquist had no knowledge. She was necessarily ignorant as to what changes had been made in the meantime. The machine had been moved from the place it was in when she operated it to another building; it had been used by various persons unknown to her. She had no opportunity of knowing what changes had taken place in its working or mechanism. Her evidence on these matters was all given over the objection of defendants' counsel, and allowed to remain in the record after a motion to strike it all out at its conclusion. Allowing the evidence to be given over the objection of defendants and failing to strike it out on a motion so to do was error.

An examination of the photograph of the machine found in the record, and of the evidence in relation to its working and operation, demonstrates that it is a machine of simple device, not complicated in its mechanism and not fraught with danger to any ordinary person when operated with due care, and that the manner of flattening the eyelets in the cards with the machine did not require the putting of the fingers in any position so that the descending plate would strike them. All the dangers in working the machine were open, apparent and obvious to every reasonably intelligent person, young or old. The only danger to be encountered was in getting the hand or fingers between the plate and the shoe at the time the plate descended to flatten the eyelet. The doing of this work did not require the operator to put either fingers or hand under the descending plate nor within eight inches of the edge nearest the operator, nor to put them in any place of danger when operating the machine with due care.

Plaintiff claims that she was employed to do what is called, in the language of the shop, "table work." As to this she has no corroboration. On the contrary, Willson

Willson v. Logan.

testifies that she was not hired to do any particular kind of work, but was first engaged in doing "table work." Plaintiff says that on the day she was injured she worked on the machine "flattening eyelets" against her protest, fortified with her tears. But Cullen, the foreman, who, she says, compelled her to work on the machine on the day of her misfortune, denies her statement in this regard. Willson swears that plaintiff requested him to let her work on the machine in the place of Fannie Latchell, who left her work in August; that between that time and November 9th, plaintiff worked part of the time on both machines, and from the latter date until the day of the accident was regularly at work upon them. In this Cullen, the foreman, corroborates Willson. Cullen put her to work on the machine, and he says she seemed pleased to get the work, never complained either about the work, the machine or its operation. The fault found with the machine in its being out of repair plainly could not have been contributed to cause the accident. The top plate refused to ascend when down on the shoe without being readjusted; that is said to have been the trouble with the machine. Even were it so, we cannot discover how such condition could contribute in the slightest degree to cause plaintiff's injuries. It did not operate to draw her fingers into the machine, and unless her fingers were there before the plate struck the shoe, the accident could not have happened. Cullen and Willson both testify that before the machine was again put in motion, after the accident, they examined it and operated it for fifteen minutes, and found it without defect and in working order. They directly testify that the "shoe" was in place at the time of the accident, and that while there were no strips to hold the shoe in place, its weight was sufficient for that purpose.

The contention of plaintiff that she was injured on the so-called "old machine" is not sustained by the proofs. The actual situation of the two machines becomes a controlling factor in determining at which of them plaintiff was working at the time she was injured. The overwhelming weight of the evidence of those who had the best means of knowing

their situation, many of the witnesses being entirely disinterested, is against the claim that plaintiff was engaged in working on the "old machine," and fully sustains the claim of defendants that it was the "new machine" at which the accident occurred. Plaintiff's version cannot be accepted against the testimony to the contrary of six witnesses, whose veracity has been in no way impugned. It is apparent, however, that if it may be conceded, for the sake of argument, that plaintiff was at work on the old machine, and that it was out of repair in the manner detailed by plaintiff and her sister Jennie, that the accident cannot be attributed in the remotest degree to such defect. The relation of cause and effect which alone constitutes actionable negligence is not present. Such defect was not the proximate cause of plaintiff's injury. If plaintiff brought on her injuries by her own negligence, so far as defendants are concerned she must be regarded as not having received them. R. R. Co. v. Harris, 53 Ill. App., 592; C. & A. Ry. v. Becker, 76 Ill., 25.

Before plaintiff can recover on any theory of the case she must prove not only that the defect was present, but that it was the cause of her injuries. R. R. Co. v. Dixon, 49 Ill. App., 299. It is plain that plaintiff could not have suffered the injuries which she did except by design or negligence. The testimony of the witness Ford has some bearing upon the want of care on the part of plaintiff at the time of the accident. Plaintiff's eyes were evidently not upon her work to guide her hand. Ford says she was looking out of the window at the time. This may reasonably account for the happening of the accident, especially when viewed in the light of plaintiff's inability to account for the position of her fingers or how they got into the machine when they were injured. While there is nothing in the evidence tending to prove that plaintiff was not a girl of ordinary intelligence, and she was admittedly within four months of attaining her majority, there is evidence of her own that she is neither very observant or a close reasoner. This appears from her answer to the following question. "Q. Did

you know if you put your fingers in where the cards were—where the eyelets were being flattened—did you know you would get hurt? A. No, I never thought of that." That one's fingers would get hurt in such a position is patent to the most immature mind. With the knowledge that eyelets were flattened by the descending force of the plate upon the shoe which plaintiff had from many months of practical experience, it is incredible, to our mind, that she could have been so calloused to her own safety as not to have had impressed upon her mind that her fingers would receive any but the same kind of treatment as the eyelets, if allowed to get in a like position.

We cannot agree with counsel for plaintiff that their client was inexperienced in the work she was engaged in on the day of her injury. The evidence in the record forbids our so doing. Plaintiff was required to use only such care as a person of her years, intelligence and experience would ordinarily use under like circumstances. What is ordinary care, however, depends upon the circumstances of each case. Here we find a minor, it is true, but one of maturity at that, within four months of her majority, working in the sight of a machine many months and for many weeks operating it daily. As before said, the machine was simple in construction and operation. Its one danger so open and obvious, viz.: that of getting one's fingers between the shoe and the perpendicularly moving plate, that a much younger person than plaintiff would be chargeable with knowledge of such an obvious danger. The so-called mangle cases are in point on this question.

In Jones v. Roberts, 57 Ill. App., 56, a sixteen-year-old girl was injured by letting her hand come in contact with a hat cylinder. The verdict of the jury was against her, and in affirming the court say, had a verdict been rendered in her favor, "it would have been the duty of the court to set it aside."

Ward v. Daniels, 114 Ill. App., 374, was another accident in a "laundry mangle," the injury occurring by drawing the hand of the operator between the cylinder and the steam

chest, crushing it. A judgment of $3,000 was reversed, without remanding, because the court found that the cylinder was open and exposed toward the operator. Its dangers were obvious and the risk therefore assumed.

On the theory that plaintiff was employed to do the work at which she was engaged at the time of receiving her injuries, by like reasoning she assumed the risk of the dangers which were open and obvious to her. Utica Hydraulic Cement Co. v. Whalen, 117 Ill. App., 23; Brown v. Siegel, 191 Ill., 226; Montgomery v. Barringer, 218 ibid., 327; Christiansen v. Graver Tank Works, 223 ibid., 142. Christiansen lost his arms in the cog wheels of a machine at which he was working, in the discharge of the duties of his employment, yet the court denied him the right to recover damages because of his knowledge that the cog wheels were upon the machine, and that the dangers were apparent and obvious to him, and therefore, in law, he assumed the risk of the employment at which he was injured.

In so far as the trial court refused to instruct the jury as requested, as to the application of the doctrine of assumed risk to the facts in evidence, it committed error. The greater weight of the evidence establishes the fact that plaintiff was put to work upon the machines at her own request, and that work upon such machines was in the line of her employment at the time of the accident. That such work was regarded as carrying with it higher duties and degrees of responsibility than did the doing of "table work" may be extracted from the undenied evidence tending to show that after working two weeks on the machines, plaintiff's wages were increased and again raised about two weeks before the accident.

A careful examination of the evidence in this regard convinces us that the verdict of the jury is manifestly contrary to its preponderating weight. For the reasons appearing in this opinion, the judgment of the Circuit Court is reversed and the cause remanded for a new trial, conformable to the views herein expressed.

*Reversed and remanded.*