50　680
109　528

## BALDWIN v. THE C., R. I. & P. R. Co.

1. **Railroads**: EVIDENCE: CONSTRUCTION OF CARS. In an action against a railroad company for damages alleged to have been received through the use of cars with double dead-woods, it was competent to introduce evidence tending to show the advantages or disadvantages of the use of cars constructed in this manner.

2. ——: CARS OF OTHER ROADS: NEGLIGENCE. It does not constitute negligence for a railway company, in the ordinary course of business, to receive and transport the cars of other roads, in general use, which may not be constructed with the most approved appliances, and the transportation or use of such cars by the company is one of the risks which an employe assumes in undertaking the employment.

*Appeal from Cass Circuit Court.*

FRIDAY, APRIL 25.

THE plaintiff, claiming to be an employe of defendant, whose duty it was to couple and uncouple cars, was injured while engaged in the performance of his duty, without fault on his part, but through the fault and negligence of the defendant, as he claims.

The act of negligence stated in the petition consisted in having on its track cars "the couplings, bumpers or chafing irons, commonly called dead-woods," on which "were not the usual ones in use upon said road, nor such as had been in use thereon at any time during which plaintiff had been" in the employ of defendant; "but that the same were of an old and unusual pattern, not now in use upon the cars of defendant, and were imperfect and defective." While engaged in coupling such cars the plaintiff was injured. There was a trial

by jury, verdict and judgment for plaintiff, and defendant appeals.

*Wright, Gatch & Wright* and *Rising, Wright & Baldwin,* for appellant.

*Sapp, Lyman & Ament,* for appellee.

SEEVERS, J.—I. The plaintiff had only been working for the defendant three or four days when he was injured. He had no previous experience in the business.

1. RAILROADS: evidence: construction of cars.

There was no evidence tending to show the cars were out of repair. The contrary clearly appeared. There is no dispute but that the cars the plaintiff attempted to couple had at each end double dead-woods on each side of the draft-iron, about a foot from it, and projecting out even with the draft-iron. The evidence did not show the cars to be faulty in their construction in any other respect. They did not belong to the defendant, but had been received on its track in the ordinary course of business from some connecting road. The uncontradicted evidence was that cars constructed as these were were used by eastern roads, and were more or less frequently hauled over western roads, including defendant's, being usually employed in the through freight business.

The double dead-woods are not used by western roads generally in constructing their own cars. It was, however, disclosed by the evidence that they are so used by the Illinois Central Railroad. The defendant's cars are constructed with but a single dead-wood on each end, through which runs the draft-iron. It did not appear from the evidence how long the double dead-woods had been used, or how old the pattern was.

The court instructed the jury as follows:

"6. The specific matters which the plaintiff charges against the defendant in this case as negligent are that it had upon its track in its yard, and required him to work about, cars

which were improperly constructed, in that they had couplings and buffers of an old and unusual pattern, differing from those usually in use on defendant's road, and different from any plaintiff had before seen or worked with, and more dangerous than those ordinarily in use, and that he was not informed thereof.

"It is the duty of the defendant, so far as its own cars, or, cars controlled by it, are concerned, to place upon its track and in use by its employes only such as are well constructed for the purpose for which they are used, and to see that they are equipped with such appliances as experience shows are best calculated to insure the safety of its employes.

"It is also the duty of the defendant, under the law, to receive and draw over its railway the cars of any connecting railway when requested, provided such cars are in good repair, and properly constructed and equipped. But the defendant is not obliged, and ought not to so receive upon its track and compel its employes to handle, cars which by reason of want of repair or faulty construction, or improper appliances, are shown by experience to be so dangerous to the lives of its employes as that ordinary prudence would forbid their use; and if the cars which caused the injury to plaintiff were, by reason of having the double dead-woods or buffers, so extraordinarily dangerous to handle as that ordinary prudence would forbid their use, then it would be negligent on the part of the defendant to either have such cars of its own on its road, or to receive from other roads and transport them, and require its employes to handle them."

This instruction submits to the jury to be determined— *First*, whether cars constructed as these were are "more dangerous than those ordinarily in use;" *second*, have the cars in question been "shown by experience to be so dangerous to the lives of its employes as that ordinary prudence would forbid their use;" and, *third*, whether the cars were, by reason "of having the double dead-woods or buffers, so extraordinarily dangerous to handle as that ordinary prudence would forbid

their use." If these several propositions, or any of them, were found in favor of the plaintiff, then, as a matter of law, the defendant was negligent in receiving and having such cars on the road.

The jury were further instructed, that "in determining whether cars so equipped with double dead-woods or buffers are so unusual, old-fashioned and dangerous as that it will be negligent to use them, you ought to consider the difference between their construction and that of other patterns, the manner in which couplings have to be made, whether the defendant has such cars of its own in use, and how generally they are in use upon well equipped roads, and whether or not any discrimination has ever been made by railroad companies or experienced railroad men against cars so constructed, and any other matters shown in evidence bearing on this question."

This instruction contains another thought at least on the same subject, which is, that in determining the question of negligence, the jury might take into consideration "whether the defendant has such cars of its own in use."

The foregoing instructions constitute the law of this case, and therefrom the conclusion is irresistible that the material question for the jury was whether these cars were more dangerous than those ordinarily in use, or so extraordinarily dangerous to handle as to make it negligence to receive them. All evidence, therefore, which had a tendency to aid the jury in solving these questions was material.

Two witnesses on the part of the defendant gave evidence as to the construction of the cars, and it is not claimed they were not competent as experts. They were asked by counsel for defendant what advantage double dead-woods afforded to cars; what effect, if any, they would have in protecting the cars from being driven together in the course of transportation; whether, with a higher degree of caution, cars so equipped could be coupled with safety. Upon the grounds of

incompetency and irrelevancy, objections to these questions were sustained.

The questions were evidently designed to elicit from the witness that the cars were not improperly constructed, and that they possessed certain advantages because of the double dead-woods. If this had been shown it would have tended to justify their use. Even if more dangerous to employes, the other advantages might more than overbalance this defect. Employes are only entitled to have used the best practical appliances, having in view the business of the road. It will not do to say that only such appliances shall be used as will render accidents impossible. The additional danger from such cars must be regarded as ordinary and incidental to the business. If their use was justifiable under any circumstances, the degree of caution required was material, and whether or not they could be coupled with safety.

The case at bar, we think, is distinguishable from *Hamilton v. D. V. R. Co.*, 36 Iowa, 31, and *Muldowney v. I. C. R. Co.*, Id., 462. In the former the question was: "What is the proper way to couple cars when timber projects" over the end of the cars? This question had reference to the conduct of the plaintiff, and the design was to show he had not used proper care; and it was said: "Certainly an opinion of the witness in regard to the caution exercised by the plaintiff is not admissible."

In substance the same ruling, under a different state of facts, was made in the Muldowney case. It is admitted no general rule can be laid down on this subject. The nearest approach thereto is, we think, stated in the Muldowney case. It is there said, among other things: "Where the question so far partakes of the nature of a science as to require a course of previous habit or study in order to the attainment of a knowledge of it," the opinion of witnesses competent to speak should be received.

The construction of cars, the mode and manner of operating them, and the effect of a particular thing on their safety

and usefulness, is a habit, study or science... We feel satisfied that the ordinary juror would not know the effect of these double dead-woods, or whether they possessed any advantages or disadvantages over others. We, therefore, think the court erred in excluding the evidence sought to be introduced.

II. Taking the foregoing instructions together, the rule is laid down that the defendant was bound to receive and haul these cars over its road only in the event the jury should find they were in good repair and properly constructed, and the jury were authorized to find, because of the double dead-woods, they were improperly constructed, notwithstanding the uncontradicted testimony showed they were, in the usual course of business, used on other roads.

2. ——: cars of other roads: negligence.

As has been said, it was the duty of the defendant to make use of the best practicable appliances known and in use in the construction of its own cars. *Greenleaf v. I. C. R. Co.*, 29 Iowa, 14. But what should be the rule in a case like the present was not determined.

If the jury have the right to infer negligence because of the double dead-woods, then it is and must continue to be negligence, in and of itself, for the defendant to receive such cars, or haul them over its road. This precise question, as to cars constructed like these, was determined in *I. B. & W. R. Co. v. Flannigan*, 77 Ill., 365, and it was held that such act did not constitute negligence.

It must be borne in mind that the question is whether it is negligence for the defendant to receive and transport cars of other roads in general use, and in the ordinary course of business, which are not constructed with the most approved appliances. Public policy has some bearing on this proposition. It is undoubtedly of great importance to the trade and commerce of the country that a car once loaded should go through to its destination without breaking bulk. It is unnecessary, it is believed, to enlarge on this point, as its importance will be readily acknowledged. Suppose, then, the Union Pacific Railroad Company should deliver a car con-

structed as these were to the defendant, which was loaded with merchandise destined for New York, and as provided in the Code, § 1292, and in strict accord therewith request the defendant to transport the same, would the defendant be bound to receive such car, and for a refusal would it be liable in damages, the only ground of refusal being that it was dangerous to its employes to transport such a car; while on the other hand it would be shown that cars so constructed were in use on all other roads. It is sufficient to say that it admits of great doubt whether such a defense should be permitted to prevail.

The occasional or frequent use of such cars on any road, in the ordinary course of business, is one of the ordinary risks an employe assumes. He knows or is bound to know that cars from other roads are being constantly hauled over the road whose employe he is. The most ordinary observation will teach him this. He must know these cars may be differently constructed. To our knowledge, at least, there is no general rule in relation thereto, and the evidence in this case discloses the fact that none such exists. He may well require that the cars provided by the company whose employe he is should have all the modern appliances, but it is not reasonable that he, at the expense of the commerce of the country, should require this as to all other cars that may be transported in the usual and ordinary course of business. The question is not in the case whether one company is bound to receive from another cars which are out of repair. We have, therefore, no occasion to determine it.

It follows, from what has been said, that in giving the instructions aforesaid the court erred.

REVERSED.