KELLY, Administrator, etc., Appellant, vs. ABBOT, imp., Respondent.

*April 29 — June 1, 1885.*

*Railroads: Master and servant: Killing of brakeman: Foreign freight cars: Dissimilar couplings.*

A brakeman was killed by being crushed between the caboose and a foreign freight car which he was attempting to couple to such caboose, by reason of the difference in height of the coupling irons, one of which passed over the other. *Held,* that the negligence, if any, which caused the accident was that of the deceased or of his fellow-servants, and that the company is not liable.

APPEAL from the Circuit Court for *Fond du Lac* County. This was an action to recover damages on account of the death of plaintiff's intestate, and was brought against the Wisconsin Central Railroad Company, and John Stewart and *Edwin H. Abbot,* trustees. The allegations of the complaint will sufficiently appear from the opinion. The defendant *Abbot* separately interposed a general demurrer, and from an order sustaining that demurrer the plaintiff appealed.

For the appellant there was a brief by *A. A. Kelly* and *Duffy & McCrory,* and oral argument by *Mr. McCrory.*

For the respondent there was a brief signed by *Edwin H. Abbot, in pro. per.,* and *Howard Morris,* of counsel, and the cause was argued orally by *Mr. Morris.*

ORTON, J. This is an appeal from the order sustaining a general demurrer to the complaint, on the ground that it does not state a cause of action. The following facts are stated in the complaint: The intestate was, and had been for a long time, a brakeman on one of the freight trains of said company, which ran between Fond du Lac and Menasha, and it was his duty to couple freight cars to the caboose. On the day the intestate lost his life, the train

was run out on a side track at Fond du Lac for the purpose of coupling a freight car which belonged to the Chicago, Milwaukee & St. Paul Railway Company to the caboose at the rear end of said train. The coupling iron of the freight car was too high and that of the caboose was too low for such coupling; and when the train moved up towards the caboose, the intestate stepped between the freight car and the caboose, and, in attempting to do such impossible coupling, the coupling irons passed by each other over and under, and the intestate was caught between the platform of the caboose and the end of the freight car, and crushed and killed. The duty of the company to provide cars of suitable couplings and adapted to each other, and the negligence of the company in not doing so and in allowing such a freight car of another company to be brought upon the track to be so coupled, and the care and prudence of the intestate, were alleged.

The want of adaptation of these two cars to each other (in all respects properly constructed in themselves) was the only defect, and the furnishing of them by the company and requiring them to be so coupled constituted the only negligence of the company complained of. There is no reason stated why the intestate did not or could not have discovered this apparent want of adaptation of the coupling irons of the caboose and car. It was presumably in the day time, as it is not stated that it was in the night. That the coupling irons were so widely mismatched would seem to have been as observable and readily seen as the entire absence of coupling irons, one or both. It is not to be inferred that this was the only instance when the cars of different roads, brought together to be coupled, were so mismatched. It might rather be inferred that not unfrequently they have coupling irons higher or lower than each other; and that there is no reasonable assurance that they are always adapted to each other in this respect. This

would seem to impose the duty upon the brakeman, before going between such cars and the caboose or cars of the road on which he is employed, to couple them together, to observe more closely and to use more caution than if he was attempting to couple the cars of his own road, which are adapted to each other by construction or selection, in order to ascertain whether their coupling irons would meet or pass each other. There is no allegation that he even looked to see, or that he could not have seen if he had looked, this clearly apparent difference in the elevation of these coupling irons, or that his attention was diverted.

The difference in the elevation of the coupling irons of this foreign car and the caboose or other cars of the defendant's road would not have been very easily or readily observed when they were distant from each other, and yet the company is sought to be held liable for its want of ordinary care in not knowing this difference when consenting to take this foreign car into its train. When the car and the caboose were brought nearly together this difference could have been at least much more readily seen and observed by comparison. The company is charged with negligently endangering the lives of its brakemen by not knowing of this difference, and, if presumed to know of it, in allowing this car to be attached to its train; and the intestate is alleged to have been in the use of proper care when he endangers his own life by not seeing, observing, or knowing of such difference in the elevation of the coupling irons. Did not the intestate have the same, if not superior, means of knowing this difference, as or to that of the company? If the negligence of the intestate and that of the company, in this respect, are equally balanced, ought the plaintiff to recover? The duty of the company to know of this difference is not absolute, and it is not presumed to know of it as a matter of law.

In *Ballou v. C. & N. W. R. Co.* 54 Wis. 257, the com-

pany was not held chargeable with knowledge of latent defects in the ladder of a foreign freight car by which the intestate in that case lost his life. Mr. Justice CASSODAY said in the opinion: " Certainly, a railroad company is not required, under all circumstances, to make use only of the safest known appliances and instruments, and to be held responsible for any failure to discard what is not such, and supply its place with something better and safer. To hold in such a case that a railway is liable, and to apply such a rule to a company receiving a loaded car from another railroad, would, in many instances, operate as a prohibition upon interstate commerce."

In *Smith v. Potter*, 46 Mich. 258, a brakeman's arm was crushed by his attempting to couple two foreign cars in the night time, the deadwood of one of which had fallen down below that of the other, and they passed by each other. A verdict for the defendant was ordered and the judgment was affirmed. The case is very much in point. See, also, *Indianapolis, B. & W. R. Co. v. Flanigan*, 77 Ill. 365; *Baldwin v. C., R. I. & P. R. Co.* 50 Iowa, 680; *Hathaway v. M. C. R. Co.* 51 Mich. 253; *Michigan C. R. Co. v. Smithson*, 45 Mich. 212.

The liability of the railway company in such cases does not depend upon its general and absolute duty to furnish safe and proper machinery and other appliances with which its employees may work, but upon its knowledge, actual or presumed, that such coupling appliances will not properly fit and connect with each other. I have therefore briefly compared the means of knowing this unfitness of the coupling apparatus which the company and the intestate had, in order to see whether the greater negligence should be imputed to the company rather than to the intestate. It does not appear from the complaint that the company had not in their employ at the time suitable persons to make inspection of all such foreign cars and ascertain their fitness

to go into its trains, and it is presumed that such persons were so employed, and that other employees of the company caused the foreign car in this case to be upon the side track ready to be coupled to the caboose. If, therefore, there was any negligence on the part of any one in not ascertaining before-hand that their couplings would not meet, it must have been the negligence of the co-employees and fellow-servants of the intestate, for which the company is not liable.

This case seems to be ruled in principle by the recent case of *Whitwam v. W. & M. R. Co.* 58 Wis. 408. In that case the draw-bar of the car was too short to be safely coupled to or detached from the engine, and the plaintiff, who was a brakeman, in attempting to detach the car from the engine, was injured. Mr. Justice LYON said in the opinion: "It seems to us that the *gravamen* of this action was the coupling of the Green Bay car to the engine with the short draw-bar, and this is, really, the only negligence charged in the complaint. It does not appear when, where, or by whom this Green Bay car was attached to such engine, but the attaching of it, as well as the order detaching it therefrom, were manifestly the acts of the servants of the defendants, engaged in operating their railroads, and hence of the co-employees of the plaintiff, and therefore the defendants are not liable for the injury to the plaintiff resulting therefrom."

The case of *Toledo, W. & W. R. Co. v. Black*, 88 Ill. 112, is perhaps more nearly in point both in facts and principle. In that case the complaint was that the coupling bars of a flat car, loaded with iron, of one company, and of a caboose of another company, were of different heights, and the plaintiff, in stooping down between the cars to do the coupling, had his hand crushed between the bars. It is said in the opinion by Mr. Justice SHELDON that it was the plaintiff's own fault "in not ascertaining the condition of the

cross-bars before attempting the coupling;" and that "from his experience as a switchman in the yard, and the frequent coming in of cars thus constructed from other roads, he had reason to suppose that the car in question was liable to have a draw-bar in the situation it was here, and it was his plain duty to examine and ascertain, as he safely might have done, what was the condition of the car in this respect before venturing upon the coupling."

It seems to us plain enough that if there was any fault or negligence anywhere in this case, it was that of the intestate or his fellow-servants and co-employees, and the defendants are not liable. It is very sad and pitiful that so many deaths and severe personal injuries result from coupling cars; but this part of the employment of a brakeman is extremely dangerous and hazardous, and especially when it becomes necessary to couple together cars coming from different roads with dissimilar coupling appliances; and the care necessary to be used increases in proportion to such danger, and the law exacts its exercise, or it will refuse redress.

The demurrer was properly sustained.

*By the Court.*— The order of the circuit court sustaining the demurrer to the complaint is affirmed, and the cause remanded for further proceedings according to law.