No. 17,848.

## THE PENNSYLVANIA COMPANY v. EBAUGH.

RAILROAD.—*Negligence.*—*Using Cars Having Uneven Couplings or Deadwoods.*—It is not negligence for a railroad company to use cars, whether belonging to it or another company, constructed with uneven couplings or deadwoods.

INSTRUCTIONS TO JURY.—*Railroad.*—*Cars Having Uneven Couplings.* —*Negligence.*—It is error to qualify a requested instruction that it is not negligence for a railroad company to use cars on its railroads and in its yards, the couplings or deadwoods of which are not of

144 687
157 481

144 687
158 206

144 687
159 170

The Pennsylvania Company *v.* Ebaugh.

uniform or equal heights, by the condition that such deadwoods or couplings are in other respects safe appliances, especially where there is no allegation or issue that the couplings or deadwoods are otherwise unsafe.

APPELLATE PROCEDURE.—*Instructions.*—*Refusal to Give.*—The several refusals to give instructions asked for as an entirety may be presented to the Appellate Court by several exceptions, and an exception to the refusal to give them as an entirety is not essential.

SAME.—*Record.*—*Evidence.*—*Filing.*—*How Shown.*—It is not essential to the consideration of the evidence on appeal, that the showing of its filing with the clerk below shall be made by an order-book entry, but such filing may be shown by the certificate of the clerk or by the transcript.

SAME.—*Evidence Not All in Record.*—An objection that the record on appeal disclosed that not all of the evidence below is incorporated in the bill of exceptions is not supported by a citation of testimony identifying a map not incorporated in the bill, where it is not affirmatively shown that the map was introduced in evidence.

SAME.—*Constitutional Question.*—The Supreme Court will not pass upon the constitutional validity of an act of the General Assembly, when the case in which it is questioned may be correctly decided without passing upon that question.

From the Marion Circuit Court.

*S. O. Pickens,* for appellant.

*W. V. Rooker,* for appellee.

HACKNEY, C. J.—This suit was by the appellee against the appellant, and his complaint consisted of three paragraphs. One paragraph tendered the issue that the appellant had been negligent in requiring the appellee, a brakeman in its employ, to couple two freight cars, not owned upon the road, the drawbars of which were not of uniform standard, but were such that one stood higher than the other, and that said cars were constructed with deadwoods and with floors projecting over the ends of the sills so that when he attempted to make the coupling his arm was caught between the deadwoods and crushed. As pertinent to this issue the appellant requested the trial court to charge the jury that "It was not negligence for the defendant company to use cars on its railroad and in its yards, the couplings or 'deadwoods' of which were not

of uniform or equal height." This charge was refused, but the court gave, as its own, the following: "4. It is not negligence for the defendant company to use cars on its railroad and in its yards, the couplings or deadwoods of which were out of uniform or equal height, *provided the said deadwoods or couplings were in other respects safe appliances.*"

The question is presented on behalf of the appellant as to the effect of the modification of the rule announced in the charge refused, as we find it in the words above italicized.

The following decisions sustain the rule that it is not negligence for a railway company to use, of its own or those of another company in the regular transportation, cars constructed with uneven couplings or deadwoods. *Michigan, etc., R. R. Co.* v. *Smithson,* 45 Mich. 212; *Smith* v. *Potter,* 46 Mich. 258; *Ft. Wayne, etc., R. R. Co.* v. *Gildersleeve,* 33 Mich. 133; *Huelett* v. *St. Louis, etc., R. R. Co.,* 67 Mo. 239; *Toledo, etc., R. R. Co.* v. *Black,* 88 Ill. 112; *Toledo, etc., R. R. Co.* v. *Asbury, Admx.,* 84 Ill. 429; *Indianapolis, etc., R. R. Co.* v. *Flannigan,* 77 Ill. 365; *Whitwain* v. *Wisconsin, etc., R.R. Co.,* 58 Wis. 408; *Kelley* v. *Abbott,* 63 Wis. 307; *Way* v. *Illinois, etc., R. R. Co.,* 40 Ia. 341; *Baldwin* v. *Chicago, etc., R. R. Co.,* 50 Ia. 680; *St. Louis, etc., R. W Co.* v. *Higgins,* 44 Ark. 293.

Many of these cases illustrate the impracticability of transferring freight from the car of one company to that of another at each change of railway line or system; the absence of any regulation by which the cars of all lines or systems are required to be of uniform construction and the propriety of the rule which requires the brakeman, whose duty involves the coupling of cars, to increase his care in proportion to the

necessarily increased dangers from the varied forms of construction as they come under his observation in the course of business. In the case of *Michigan, etc., R. R. Co.* v. *Smithson, supra,* in an opinion by Judge Cooley, the proposition is made clear that when the course of business brings together two cars of different companies the brakeman must use his own eyes for notice that such cars have deadwoods upon them or that the couplings are not of equal height, and it is there said: "It does not follow that laborers must sacrifice life or limb in order to meet this great public necessity. It is certain that there must be brakemen and switchmen, and that these must be called upon to perform the somewhat hazardous act of coupling cars, and of making up trains of cars of different constructions. But the act is dangerous. First, because inevitable accidents will sometimes occur; and second, because even in the most exposed positions men will sometimes be wanting in ordinary prudence. But when accident or negligence intervenes, any business is dangerous; the difference in danger is only in degree. There are more risks in operating a mill by steam than by water, but this does not prove the use of the steam engine to be negligence in the mill owner. The same remark may be made of different cars; one construction of car may render necessary a higher degree of care in coupling than another calls for; but there is no ground whatever for imputing to this defendant, or any other railroad company, legal negligence for that which was a necessity of its business, and which all persons in its employ must be presumed to have known was a necessity."

In this case the appellee testified that after he went to work upon the line in question, he learned that "the cars used on that division were equipped with

deadwood," and that he knew a part, at least, of the Pennsylvania Company's cars were so equipped.

It was also testified by another that the cars which caused the injury did not vary from the general rule; they were the standard cars; the standard Pennsylvania coal cars. And it was testified also by another, that cars with deadwoods such as described were run into Indianapolis on all roads; that they were in use by others than the Pennsylvania Company because they were considered safer by all railroad men; that seventy-five out of one hundred would prefer coupling a car with deadwoods.

The necessities of the position of brakemen and the knowledge possessed by the appellee charged him with the duty of looking for increased hazards and of exercising greater care when cars of different construction were to be coupled.

It should be remembered that the case presents no question of defective construction or of ill repair, it is simply a question of difference in form of construction.

The charge given recognizes the rule that it was not negligence to take the cars upon the road and to place them in the train, and it was, perhaps, needless that we should have said so much in support of that rule, but the words of the charge in italics engraft an unauthorized condition upon the rule. There was no allegation or issue that the "couplings or deadwoods" were unsafe otherwise than by the form of construction. The charge directed the jury that the appellant was not negligent in using cars with uneven couplings or deadwoods, "provided said deadwoods or couplings were in other respects safe appliances." Giving the proviso its natural and necessary force it not only introduced a condition to the rule of non-negligence, which condition was unauthorized by any issue, but it required more of the appellant than the law would

have required if the appliances named had been alleged otherwise unsafe. It is a matter of common knowledge that the coupling of freight cars is at best a very hazardous act; that if the buffers and drawheads are not uneven the task involves a high degree of care to avoid the necessary dangers, and that no practicable system of coupling freight cars with safety to the person making the coupling has been devised. The obligation of railway companies is to use ordinary care to supply reasonably safe appliances for coupling, and they are not required to furnish safe appliances where, from the nature of the business, safety is not possible. Nor are they required to provide the best or the most approved or any particular design of appliances. *Lakeshore, etc., R. W. Co.* v. *McCormick*, 74 Ind. 440; *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Jenney Electric, etc., Co.* v. *Murphy*, 115 Ind. 566, and cases cited above.

In the first of the cases just cited it was said: "The master's obligation is not to supply the servant with absolutely safe machinery, or with any particular kind of machinery; but his obligation is to use ordinary and reasonable care not to subject the servant to extraordinary or unreasonable danger. When a master employs a servant to do a particular kind of work, with particular kind of implements and machinery, the master does not agree that the implements and machinery are free from danger in their use, but he agrees that such implements and machinery, to be used by such servant, are sound and fit for the purpose intended, so far as ordinary care and prudence can discover." As we have already seen, the question here at issue did not involve any inquiry as to an imperfection or danger in the appliances named, excepting in the lack of uniformity in height. Other imperfections in them or dangers in their use were not the subject

for instruction from the court. The proviso in the instruction given could but suggest that it was indispensable to a freedom from negligence in the use of uneven couplings or deadwoods that they should be otherwise safe appliances. This, in our opinion, was erroneous. In another instruction the court charged generally that the duty of a master towards his servant was to use ordinary care in furnishing reasonably suitable and safe appliances in the service. This general charge does not cure the error of the particular charge either in assuming an issue not made or implying a burden not recognized by the law.

It is objected by the appellee that the instructions asked by the appellant and refused by the court are not in the record for the reason that they were asked as an entirety and there was no exception to the refusal to give them as an entirety. The court's refusal was several, and the appellant's exceptions were several, and the action of the court and the exceptions so taken are brought into the record with reference to the several charges so asked. This practice has never been condemned by this court, and we do not observe its analogy to the practice upon joint exceptions which are sought to be presented severally.

If appellant's instructions were not in the record the error here found is predicated upon the charge given by the court which is not claimed to be out of the record.

It is also complained by the appellee that the evidence is not in the record because no order book entry of its filing with the clerk is disclosed. That it must be filed and that this fact must appear upon the face of the record has been many times decided, but that it must appear from an order book entry is not required. While an order book entry of the filing would verify the fact of filing, it is not required any more than in

the filing of a complaint. Those things required to be filed with the clerk are shown to have been filed when the clerk certifies to the fact of filing, or the transcript affirmatively discloses the filing.

Objection is made that the record discloses that all of the evidence given upon the trial was not incorporated in the bill of exceptions and, therefore, that we should not consider the evidence. In support of this objection counsel cites two offers, by him made in the lower court, to prove, in blank. The omissions are not of evidence and the blanks carry the assumption that the offers were never completed. In further support of this objection counsel cites testimony identifying a map as that of the locality of the accident. It is not there disclosed that the map was introduced in evidence, and its identification and proof of its correctness does not establish the introduction of the map in evidence against the judge's certificate that the bill of exceptions contains all of the evidence.

Questions have been argued orally and by elaborate briefs as to the constitutionality of the "Employer's Liability Act," Acts 1893, p. 294. The liability of the appellant under said act was probably not in question under two of the three paragraphs of complaint, and was certainly not involved in the ruling upon which we have declared error.

It is not the practice, and it may be doubted if it is the privilege, of this court to pass upon the constitutional validity of an act of the general assembly when the case in which that validity is questioned may be correctly decided without passing upon that question. *Henderson, Aud.,* v. *State, ex rel.,* 137 Ind. 552 (24 L. R. A. 469), and cases cited.

The judgment of the lower court is reversed, with instructions to grant a new trial.

Filed May 6, 1896.