## Wabash Railroad Co. v. Fanny Farrell, Adm'x.

1. EVIDENCE—*Reports of Trainmen as to Accidents.*—The written report of a foreman of a switch engine to the train-master, of an accident which he did not witness, but which it was his duty to report, is not admissible in evidence at the trial of an action for personal injuries resulting from the accident.

2. SAME—*Photographs.*—It is improper to receive a photograph in evidence in the absence of clear proof that the conditions at the time of taking the photograph, were the same as when the accident occurred.

3. SAME—*Height of Appliances, etc.*—To establish the height and conditions of a draw-bar as to its being the standard height as used by railroads generally throughout the country is competent as bearing upon the question of its being in good condition and to rebut the charge of negligence.

4. SAME—*Comparison of Appliances.*—In defense of an action for personal injuries resulting from a defective draw-bar, it is competent for the railroad company to show whether or not the draw-bar on the cars of another railroad was of the same height of the draw-bars of cars used on its own road, and of cars of other companies used on its road.

5. SAME—*Ante-Mortem Conversation with Injured Persons.*—Conversation with an injured person prior to his death is competent as a declaration of the party against his own interest, and comes within the exception to the rule rejecting hearsay evidence.

6. PERSONAL INJURIES—*Master and Servant—Burden of Proof.*— When a servant seeks to recover damages of his master for a personal injury resulting from defects in the machinery of a car furnished for use, the burden of proving the negligence alleged rests upon the servant. Mere proof of the accident or injury does not shift the burden of proof on the master, and require him to show that the injury did not result from his negligence.

7. INSTRUCTION—*Placing a Higher Duty upon an Employer than the Law Requires.*—An instruction which places upon the employer a higher duty than the law requires is erroneous.

8. MASTER AND SERVANT—*Duty of the Master in Furnishing Machinery.*—In favor of his employes, a master is bound to exercise reasonable or ordinary care to see that the machinery and appliances furnished him for use are reasonably safe. He is not bound to use the highest or even

a high degree of care.   The same care required of the servant is required of the master.

9.   RAILROADS—*Duty to Cars of Other Companies.*—The duty of a railroad company toward a car received by it for transportation over its road, in the ordinary course of railroad business, is one of inspection only, and it is not to be held responsible for latent defects which can not be discovered by such an inspection as the exigencies of traffic will permit in the exercise of reasonable care.

10.   SAME—*Foreign Cars in Apparent Good Order.*—When foreign cars appear to be in an ordinarily safe and proper condition, railroad companies are obliged to transport them, and their duty as to such car is that of inspection only.

11.   SAME—*Bound to Receive Foreign Cars, etc.*—On the multiplicity of railroads throughout this country are cars of many kinds, varying in size, height and form of construction, and no railroad is to be justified in refusing to receive the cars of other roads because they are not uniform with its own.   Railroad employes handle these different cars daily, and have full knowledge of the fact that they are not alike nor of the same height, as to draw-bars and otherwise.   To make it negligence *per se* for a railroad company to receive such cars would be unreasonable in the extreme.

**Trespass on the Case,** for personal injuries.   Trial in the Circuit Court of Livingston County; the Hon. GEORGE W. PATTON, Judge, presiding.   Verdict and judgment for the plaintiff.   Appeal by defendant. Heard in this court at the May term, 1898.   Reversed and remanded. Opinion filed December 14, 1898.

GEO. B. BURNETT, attorney for appellant.

C. C. & L. F. STRAWN, attorneys for appellee.

MR. JUSTICE CRABTREE delivered the opinion of the court.

This was an action on the case, to recover damages alleged to have been sustained by the widow and next of kin of plaintiff's intestate, James Farrell, deceased, who was killed while in the employment of appellant as a switchman in its yards at Forrest, Illinois.   There was a trial by jury resulting in a verdict and judgment in favor of appellee for $3,500, a motion for new trial having been overruled.

The declaration contained several counts, but the gist of the negligence charged was, that appellant delivered to the deceased, to be switched upon its tracks, a car which was

crippled and defective, in that the draw-bar and bumper were so much lower than other cars which were standing upon the same tracks that when the car upon which deceased was riding in the performance of his duty, came in contact with the car standing upon the track and with which it collided, the lower car, upon which deceased was riding, ran in against the higher car, raising the last named car off its center, so that the higher car was raised up and ran upon the platform of the lower car, producing a collision with the superstructure of the lower car, whereby the legs of deceased were caught and crushed, thereby causing his death.

It appears from the evidence that the car upon which deceased was riding was a foreign car, belonging to the C. P. & M. R. R. Co., and had come upon appellant's road that day for transportation to Chicago, and was at the time heavily loaded with coal. The only evidence offered by appellee to prove the allegations of the declaration, was a letter from one of appellant's switchmen, employed with deceased in the same yard, which was sent to the train-master, and purported to give an account of the accident; and also a photograph of the two cars which collided and caused the injury to deceased, the photograph having been taken the day following, after the cars had been moved, but while they stood relatively in about the same position they occupied at the time of the accident.

This letter, and the photograph, were both admitted in evidence over the objection of appellant, and it saved the proper exceptions to this ruling of the court.

The letter referred to was as follows, to wit:

"THE WABASH RAILROAD COMPANY.

April 18, 1896.

MR. H. W. BALLOU, Trainmaster.

Dear Sir: We went up to the new yard to switch No. 60 train, and made two switches on the train, and switchman Farrell got on two cars to ride them down on new No. 1 track, and the two cars was running about two miles an hour when I cut them off the train; they had to run about 390 feet before they struck the other cars that

were standing in on No. 1 track, and when they struck the car on No. 1 track I heard switchman shouting for me to come down to him; when I got there he was lying on the ground, and told me that his both legs was broke, and went to switch engine and got him off and come down the main track to him and got a train door to put him on and fetch him down to the depot, and the two cars he rode down was two new cars and two good brakes on the cars, and when he struck the Wabash 4079 it was loaded with lumber; the car raised up off the center and struck the switchman on C. P. & M. 180 and broke his both legs and broke the bar and brake staff, and the south end coal car was broke there; went through the car; that is all I know.

Yours truly,

Wм. Twist,

Foreman Switch Engine, Forrest, Illinois."

The letter bears date the day of the accident, and was written by Twist, the foreman, in pursuance of his duty to make report of all accidents. It was delivered to Ballou, the trainmaster, a day or two after the accident.

We are of the opinion it was error to admit this letter in evidence against the objection of appellant. The writer was not present when the accident occurred, but only came upon the scene when he heard the call of deceased after he was injured. Hence all that the letter contains as to the cause of the accident are the mere conclusions of the writer. He would have been a competent witness, provided he had been called, to prove what he saw, but his conclusions would have been incompetent from the witness stand, and no reason is perceived why they would be any more competent when stated in a letter, even though it be a report made in the line of his duty.

In Doyle v. R. R. Co., 42 Minn. 82, it was held that the declaration of an agent, sent by defendant to obtain facts and circumstances relating to an accident are not admissible. And in Carroll v. R. R. Co. (Ga), 10 S. E. Rep. 163, it was held that reports to the general manager of a railroad company touching the facts, circumstances and results of an accident and who was to blame therefor, made after the event by the superintendent and conductor, supported by the affidavit of the latter and of other employes, are not admissible in

evidence to affect the company, whether such reports were exacted and made under standing rules requiring the same, or under special orders for the particular occasion.

In Vicksburg & Meridian R. R. Co. v. O'Brien, 119 U. S. 99, it was held that the statement of the engineer in charge of defendant's train, made from ten to thirty minutes after the accident, that the speed of the train was about eighteen miles an hour, was inadmissible to prove the rate of speed at which the train was moving as against the defendant.

It is apparent the letter in the case at bar was written after the foreman got away from the place of the accident and is but a mere narrative from recollection of what the writer had seen.

In Chicago & Northwestern Ry. Co. v. Fillmore, 57 Ill. 265, it was held in an action to recover for injuries to the plaintiff, occasioned by his falling through an uncovered bridge in attempting to get on the defendant's train, the bridge being under the control of the defendant, that the declarations of the conductor of the train, made after the accident had happened, tending to show that the company had been guilty of negligence, were inadmissible as evidence. That the conductor was a competent witness, and whatever knowledge he had as to the condition of the bridge, should have been testified to by himself as a witness.

Under any view we have been able to take of this question we think the letter was incompetent, and it was error to admit it in evidence.

But even when admitted we do not think the letter tended to prove the allegations of the declaration. There is nothing in it which shows that one car was lower than the other or that the draw-bars or bumpers of either car were in any way defective or out of order. Certainly the statements of the letter did not prove the charge of negligence contained in the declaration.

We are of the opinion it was improper to receive the photograph in evidence, under the circumstances, and in the absence of clear proof that the conditions were the same as when the accident occurred.

It is assigned for error that the court rejected proper testimony offered by appellant.   George W. Wrigney, a witness for defendant, and foreman of its car department, the next morning after the accident examined the car which is alleged to have been defective, and testified that it had been in use about nine months.   He also stated that he had examined the draw-bar and picked up a piece of iron directly over the place where the car was hit and that the break was new; also that he examined the draw-bar as to its height.   He was then asked this question by counsel for appellant: " Now, I will get you to state whether or not there was any defect in that draw-bar, with respect to being too low or too high."   The question was objected to by counsel for appellee and the objection sustained.   The witness then stated that the height of the draw-bar was thirty-three inches from the center line of the bar to the top of the rail, and that he knew the standard height of draw-bars as used on railroads generally.   The witness was then asked this question:   " State if you know the height of this draw-bar, with respect to that standard ?   But the court sustained appellee's objection to the question and the witness was not permitted to answer.   Counsel for appellant then offered to prove by the witness that the draw-bar in question was the standard height as used by railroads generally throughout the country, but upon objection by appellee the offer was rejected.   We think the testimony was competent and should have been admitted.   The real question for the jury to determine was, as to whether appellant had been guilty of negligence, or had failed to use reasonable care in furnishing the car in controversy to be switched or handled by deceased.   The evidence offered bore directly upon that question.   If appellant could show that the car complained of was of the standard height as to its draw-bar, and was in good condition, it had the right to do so, to rebut the charge of negligence.

The witness was also asked to state whether or not the drawbar on the C. P. & M. car was of the same height of the drawbars of cars of appellant used on its road, and of cars of

other companies used on appellant's road. But the court sustained appellee's objection to the question. We think this was error. The only defect complained of or charged in the declaration was to the C., P. & M. car. No complaint was made of the Wabash car with which the other collided. The charge in the first additional count of the declaration was that "the defendant carelessly and negligently gave to its switching crew, in which the deceased Farrell was a helper, a car (upon the rear platform of which Farrell was standing in the discharge of his duty as such helper), so much lower than the car against which it was being set on the side track, that when said lower car ran in against the higher car on the side track, such higher car raised off its center and raised up onto the platform of the lower car and collided with the superstructure of the lower car, and caught between them the legs of the deceased and crushed them, from which injury he died." In other counts it is alleged the accident occurred because the draw-bar and bumper of the one car was lower than the other, and that we understand to be the real complaint. Now, any evidence showing that the draw-bar complained of was the same height as those upon the cars ordinarily and generally in use on appellant's road, would surely be competent to rebut the charge of negligence in furnishing the car in question to be handled by the deceased. The evidence should have been admitted. Nor was the error cured by the offer of the court to permit the appellant to show the relative height of the draw-bar of the C., P. & M. car, and the Wabash car with which it collided.

The question presented by the pleadings was, whether the draw-bar of the C., P. & M. car was too low; and that question was not to be determined by comparing it with the draw-bar of the Wabash car with which it collided. If the draw-bar of the C., P. & M. car was not too low, but was of the same height as cars in general use throughout the country, and which deceased was handling daily, then appellant was not guilty of the negligence charged in the declaration, without regard to the relative height of the two cars which collided.

Wabash R. R. Co. v. Farrell.

A witness for appellant testified that he had a conversation with plaintiff's intestate the night of the accident, as to how it occurred, but the court refused to allow the witness to relate the conversation, apparently on the ground it was too long after the accident to be a part of the *res gestae.* We think this ruling was erroneous. The evidence offered was a declaration of the party against his own interest, made by a person since deceased, and comes within the exception to the rule rejecting hearsay evidence. In such cases it is immaterial whether the declarations are made at the time of the fact stated or at a subsequent day. 1 Greenl. on Ev., Sec. 147.

The admission of a party to the record is always received in evidence against him. Rogers v. Suttle & Scroggin, 19 Ill. App. 163. While deceased is not a party to the record, his administratrix brings the suit and is bound by the admissions of her intestate in his lifetime.

Under the evidence the court should have given the instruction asked by appellant at the close of plaintiff's evidence, directing a verdict for the defendant, and we think it was error to refuse it. The burden of proving negligence as charged in the declaration was upon the plaintiff, and we think the letter and photograph admitted in evidence, even if competent, did not prove, nor in fact tend to prove it. All they did prove was that the accident happened, but whether through the negligence of appellant or not, they furnish no information. When a servant seeks to recover damages of his master for a personal injury resulting from defects in the machinery of a car furnished for use, the burden of proving the negligence alleged rests upon the servant. Mere proof of the accident or injury does not shift the burden of proof on the master, and require him to show that the injury did not result from his negligence. Sack v. Dolese et al., 137 Ill. 129. Nor is the mere happening of the accident even *prima facie* evidence of negligence against the employer. T., W. & W. R. R. Co. v. Moore, Adm'x, etc., 77 Ill. 217. Many other authorities might be cited to the same effect, but we deem it unnecessary.

The first instruction given at the instance of the plaintiff was as follows:

"1. The court instructs the jury that it is the duty of a railroad company to exercise a high degree of diligence to provide cars, machinery and appliances it furnishes its employes in the operation of its road, that are reasonably safe and suitable; and such company is liable in a suit for the use of the next of kin, for the death of a brakeman, by the improper construction and by latent defects in such cars, machinery and appliances, if such improper construction or such latent defects as the case may be, renders the same unsafe, and are such as may be discovered by the use of the usual tests for such purpose, providing such brakeman was in the exercise of ordinary care at the time of the accident."

We think this instruction should not have been given. It places upon the employer a higher duty than the law requires. In favor of his employes, a master is bound to exercise reasonable or ordinary care to see that the machinery and appliances furnished him for use are reasonably safe. He is not bound to use the highest or even a high degree of care. The same care required of the servant is required of the master; no more and no less. Hence it has been held that an instruction which tells the jury that it is " the duty of a master to furnish his servants with tools and appliances that are reasonably safe," is erroneous. (Belleville Pump & Skein Works v. Bender, 69 Ill. App. 189; Camp Point Mfg. Co. v. Ballou, Adm'r, 71 Ill. 417.)

But in another respect we think the instruction was misleading, as applied to the facts of this case. The car which it is claimed was defective in its draw-bar appliances, was a foreign car, not provided by appellant, but received by it for transportation over its road in the ordinary course of railroad business. Its duty in relation to such car was one of inspection only, and it was not to be held responsible for latent defects which could not be discovered by such inspection as the exigencies of traffic will permit in the exercise of reasonable care. (C. & G. W. R. R. Co. v. Armstrong, 62 Ill. App. 228. See, also, Kelly, Adm'r, etc., v. Abbott, 63 Wis. 307; Ballou, Adm'x, v. C., M. & St. P. Ry. Co., 54 Wis. 257.) From anything that appears in the evidence, the fact

that the draw-bar of the foreign car was lower than the cars
of appellant, may not have been discoverable by a reason-
ably careful inspection, and may have only become appar-
ent when the cars were brought in contact with each other,
in which case it would seem unreasonable to hold appellant
guilty of negligence in not having ascertained the fact prior
to the accident.    But this instruction seems to proceed upon
the theory that there is no difference in the duty or liability
of appellant as to cars provided and owned by it and as to
those coming upon its road from other railroad companies.
In this respect we think the instruction could not have failed
to mislead the jury.

The second instruction given for the plaintiff was as fol-
lows :

" 2.    If the jury believe from the evidence that the draw-
bar of the C., P. & M. car No. 180, broke while in the usual
and customary use to which such class of cars was applied
by the defendant, then the presumption is that such draw-
bar was defective, either in its style or form of construc-
tion, or in the material of which it was constructed, and in
such case the defendant was *prima facie* chargeable with
negligence in the use of such draw-bar; and unless such
*prima facie* negligence has been rebutted by proof that such
draw-bar was of the kind usually employed in skillful rail-
roading, and was made by a skillful maker, or had been sub-
jected to and stood the usual tests for the discovery of such
defects in such appliances, and you believe from the evidence
that the deceased, Farrell, while in the exercise of due care
on his part, met his death by reason of the breaking off of
the upper part or upper half, or nearly so, of such draw-bar
when it came against the draw-bar of the Wabash car in the
usual course of the business of the defendant, in switching
in the yard of the defendant at Forrest, on or about April 18,
1896, as alleged in the declaration, and it has not been shown
by the evidence that such draw-bar was of the kind usually
employed in skillful railroading and made by a skillful maker,
or had not been subjected by the defendant to the usual
tests for the discovery of defects, and withstood them, then
you should consider such facts, together with all the other
facts and circumstances in evidence, in determining whether
Farrell met his death by the negligence of the defendant, as
charged in the declaration; and if upon such consideration
you do believe that said Farrell did meet his death by such

negligence, then you should find the defendant guilty, and assess her damages at such sum, not exceeding the amount alleged in the declaration, as in your judgment the widow and son, as next of kin, have sustained by such death."

From what we have already said, and from the authorities cited, it will be seen that this instruction is not the law and was therefore erroneous. By this instruction the jury are told that the mere fact of the accident raises a presumption of negligence against appellant, which we have seen is not the law. The duty of appellant in relation to this foreign car being one of inspection only, it. was not bound to apply such tests as are usual for the discovery of defects in manufacture, as might be proper or necessary in regard to its own cars. (Ballou, Adm'x, v. C., M. & St. P. Ry. Co., *supra.*) Inasmuch as it is the duty of a railroad company to receive from other companies, cars for transportation over its road, to require it to apply all the known tests to ascertain whether such cars are properly made, of good material and skillful workmanship, and equipped with the best appliances, would be to place upon it an insufferable burden. The law makes no such requirement. When foreign cars appear to be in ordinarily safe and proper condition, railroad companies are obliged to transport them, and their duty as to such cars is that of inspection merely. (Bailey's Personal Injuries, Relating to Master and Servant, Sec. 2540.)

For the same reasons instructions numbered 3, 4 and 5 given for plaintiff were also erroneous.

By the seventh instruction the jury were told that if they believed from the evidence that inequality in the height of cars renders the handling of them in switching and setting them in against one other, unsafe and dangerous to brakemen and others handling them, then it is negligence on the part of a railroad company to furnish such cars of unequal height to its employes for use in the operation of its road. We know of no authority announcing any such rule of law. On the multiplicity of railroads throughout the country there are cars of many kinds varying much in size, height, and form of construction, and no railroad company would be justified in refusing to receive the cars of other roads,

because they were not uniform with its own.    Railroad employes handle these different cars daily, and have full knowledge of the fact that they are not all alike nor of the same height as to draw-bars or otherwise.    To make it negligence *per se* for a railroad company to receive these cars would be unreasonable in the extreme.    There have been many cases of injuries to employes because of difference in the height of draw-bars, in which it was held there could be no recovery on account of the want of due care on the part of the injured servant.    (T., W. & W. Ry. Co. v. Black, 88 Ill. 112; Kelly, Adm'r, etc., v. Abbott, imp., 63 Wis. 307.)    In none of the cases which we have found has any such rule been intimated as that laid down in the instruction under discussion, nor do we think any such can be found in the adjudged cases.    We hold the instruction was erroneous.

For the reasons given, the judgment will be reversed and the cause remanded.