FRANK O'FLANAGAN, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 28, 1910.

1. **RAILROADS: Inspection of Cars: Negligence: Master and Servant.** Plaintiff, a switchman in defendant's employ, was injured by the pulling out of a grab iron on a foreign car, causing his fall to the ground. The car in question was a "bad order" car, but the defect because of which it was so marked, did not affect the grab iron. It was defendant's custom to so mark such defective grab irons that the attention of switchmen was called thereto. This grab iron was not so marked. The

question of defendant's negligence in failing to detect the defect in the grab iron, or to mark it, if it was detected, was for the jury.

2. ——: ——: ——: **Notice of Defect.** Although this was a foreign car, it is immaterial that the evidence did not show when it came into defendant's possession, because it appeared that defendant had made an inspection and had found sufficient defects to authorize its ordering the car to its repair tracks. Proof of actual notice dispenses with the need of proof of constructive notice.

3. ——: ——: ——: ——. While a railway company receiving a foreign car is not bound to subject such car to a test as to defects in construction, it owes the duty to give such cars the same inspection that it should give to its own cars, to detect defects after the cars have been in use.

4. ——: ——: ——: ——: **Assumption of Risk.** Where a servant, knowing that a car is being sent to the repair track to remedy certain defects, is injured as the result of such defects, his injury would be due to an assumed risk. But the master must not enhance the natural risks of the business by his own negligence, and if, in such a case there are defects of which the master should have known and the servant did not know and should not have known, and the servant is thereby injured, the master will be liable to the servant, for the latter never assumes the risks created by the master's negligence.

5. **DAMAGES: Excessive.** Under the evidence in this case the verdict for $5000 was excessive, by $2000.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

AFFIRMED CONDITIONALLY.

*Elijah Robinson* and *Harris Robinson* for appellant.

(1) If the handhold on the car in question was defective, it was a latent defect which could not have been discovered by an ordinary inspection. Goodrich v. Railroad, 152 Mo. 231; Clardy v. Railroad, 73 Mo. 578. (2) In the absence of any evidence on this subject, it will not be presumed that the car had been in possession of defendant a sufficient length of time to

raise a presumption of negligence, because of failure of defendant's employees to discover a defect in the handhold. It devolves upon plaintiff in every case to introduce evidence establishing, or tending to establish, facts which are necessary to entitle him to recover. Juries are not permitted to arrive at verdicts by mere guess work or conjecture. Railway v. Shirtle, 97 Pa. St. 450; Peffer v. Railroad, 98 Mo. App. 291; Zurfluh v. Railroad, 46 Mo. App. 636; Peck v. Railroad, 31 Mo. App. 123; Moore v. Railroad, 28 Mo. App. 622; Long v. Moon, 107 Mo. 338; Avery v. Fitzgerald, 94 Mo. 207; Jackson v. Hardin, 83 Mo. 175; Bank v. Bank, 10 Wall. 639; Commissioner v. Clark, 94 U. S. 284; Powell v. Railroad, 76 Mo. 80. White on Personal Injuries, sec. 238. (3) Under the circumstances shown by the evidence in this case plaintiff assumed the risk of injury that might result from working with the car in question. Railroad v. Hennessey, 96 Fed. Rep. 713.

*John M. Cleary* for respondent.

(1) The defect was such as could have been discovered by a proper inspection. Martin v. Railroad, 142 Fed. 650; Railway v. Allen, 114 Fed. 177; Fellow v. Bullard, 94 Fed. 781. (2) Defendant was not bound to accept a defective foreign car and it owed its employees the same duties of inspection and repair with regard thereto as with regard to one of its own cars. Gutridge v. Railroad, 94 Mo. 468; Railway v. Valerius, 56 Ind. 511; Railroad v. Williams, 95 Ky. 199; Gottlieb v. Railroad, 100 N. Y. 462; Goodrich v. Railroad, 116 N. Y. 398; Reynolds v. Railroad, 64 Vt., 24 Atl. 134; Railroad v. Reagan, 96 Tenn. 128, 33 S. W. 1050; Railroad v. Mackey, 157 U. S. 72; Fellow v. Bullard, 94 Fed. 781. (3) Plaintiff did not assume the risk of defendant's negligence in failing to repair the handhold in the yard as was customary. Zellars v. Water & L. Co., 92 Mo. App.

107; Dupuy v. Railroad, 110 Mo. App. 110; Buscoe v. Railroad, 130 Mo. App. 513; Cothron v. Cudahy Packing Co., 98 Mo. App. 343; George v. Railroad, 125 S. W. 196; Brady v. Railroad, 206 Mo. 528 l. c.; Charlton v. Railroad, 200 Mo. 433; Curtis v. McNair, 173 Mo. 270; McMurray v. Railroad, 125 S. W. 751.

JOHNSON, J.—This action is prosecuted by a servant against his master to recover damages for personal injuries alleged to have been caused by the negligence of the master. The appeal was taken by defendant from a judgment of five thousand dollars.

Plaintiff was employed by defendant as a switchman in the "east bottom yards" at Kansas City. At the time of his injury, the crew of which he was a member was engaged in switching three defective freight cars to the repair track. Plaintiff states he did not know that these particular cars were defective, but each had "bad order" cards tacked on its sides. He climbed to the top of the second car from the engine to loosen the brakes if he found them set and went from that car to the one in front. After doing his work there he started to descend from the top of that car on the ladder provided for that purpose. This ladder consisted of an iron stirrup extending down some fifteen inches from the bottom of the car and iron handholds running up the side of the car and ending in a "grab iron" attached to the top of the roof some four or five inches from the edge. The attachment was by means of a lag bolt or screw at each end of the grab iron. The screws were inserted into the wooden roof. The ends of the rod were curved in and flanged to cover and conceal from view the surface of the wood surrounding the screws.

As plaintiff was descending, the screw at one end of the grab iron pulled out, causing him to fall to the ground, a distance of some fifteen feet. The evidence of plaintiff tends to show that the screw pulled out on account of the rottenness of the wood surrounding it.

The evidence does not show that the defect would have been open to detection by visual examination of the place. It does not appear how long the car, which belonged to a foreign road, had been in possession of defendant, but it does appear that the three cars were "tagged" with bad order cards by defendant and were being sent to the repair track for necessary repairs. There is evidence to the effect that it was the custom of defendant known to its employees to designate in a special way defects in the attachments of handholds. The inspector would draw with chalk on the wood near the defective place a rude arrow pointed towards the defect and would write "Bad order, Lookout" or some similar warning in order that a switchman using the ladder might have conspicuous notice of the defect. No such warning was given in the present instance.

Counsel for defendant contend that the trial court should have sustained the demurrer to the evidence on the ground that there was no evidence tending to show negligence on the part of the defendant and say, first, that "if the handhold on the car in question was defective, it was a latent defect which could not have been discovered by an ordinary inspection." Citing Goodrich v. Railway, 152 Mo. 231, where it is held that to charge the master with liability "the defect must be of such a character as to cause an ordinarily prudent person to apprehend difficulty and danger from its existence and the defendant must have had actual knowledge of it for a time long enough to enable it, reasonably, to make repairs, or the defect must have existed for such a length of time that by the exercise of reasonable diligence the defendant could have ascertained it and repaired it."

Though this was a foreign car and the evidence does not show when it came under the control of defendant, the inference that defendant had been in possession of it long enough to know it was defective is conclusively established by the undisputed facts that defendant had caused the car to be inspected; had discovered that it

was in a defective condition, had marked it as defective, and had ordered it to the repair track for repairs. Since defendant had actual notice of the condition of the car, it is immaterial whether or not the evidence would sufficiently disclose an issue of constructive notice.   The material question on this branch of the case is whether the evidence will support a reasonable conclusion that defendant knew or by proper inspection should have known of the existence of the  particular  defect  that caused the injury.   There is no evidence that the inspection made by defendant revealed the decayed condition of the wood around the screw, but we think the evidence of plaintiff does tend to show that the defect should have been discovered had reasonable care been observed in the inspection.   True, the surface of the wood immediately around the screw was covered by the flanged end of the rod and this might have obscured the defect to an ordinary visual inspection, but we hold that under all the circumstances disclosed, the question of negligence in the inspection appears as one of fact for the jury to solve. The reasons for this ruling are clearly stated in the following excerpt from the opinion of the Supreme Court in Gutridge v. Railway, 105 Mo. l. c. 526.

"The argument is made that the inspector was required to use his eyes only in the examination of the handhold, and if he could not see the defect by looking, then defendant's duty was performed, and we are asked to declare that the law required him to do no more. We cannot formulate any rule of law fixing definitely the standard of ordinary care.   Every attempt to do it has resulted in failure.   What is ordinary care in one case, might be the grossest negligence in another.   A mere glance at one handhold might indicate to an ordinary observer that it was safe, while, on the other hand, a glance might discover its defectiveness, and again the conditions might be such that ordinary prudence would suggest and require a careful scrutiny.   We must not

confound what the law requires and what ordinary prudence requires. In determining whether a master has been ordinarily prudent in the keeping of the appliances he has furnished his servants in repair, many circumstances must be considered. Their construction, the materials composing them, their age, the uses to which they are put and the dangers attending their use, with many other varying circumstances must all be taken into the account. In the case at bar, the car was an old one. The handhold was fastened to the car by screws. It is true the proof shows that this mode of fastening handholds was in common use, but if a railroad company chooses to use this method it must conform its action to the requirements of that method. It must take notice that the screws in wood will become loose; that wood will rot, and rot especially under iron exposed to the weather, and, when an inspector sees that the handhold is fastened by screws in the wood alone, ordinary prudence requires a more careful examination than if the handhold was screwed down on an iron or other metal plate or was fastened by means of bolts and iron strops. The fact that the wood is old and the screws are rusty would naturally suggest to an ordinarily prudent man the propriety of a thorough inspection. We cannot concur in the contention that an inspector of a handhold performs his duty under all circumstances by simply using his eyes to detect defects. We do not say that the law requires him to do more in a given case, nor can we say what tests he ought to apply in all cases; but we do say that ordinary prudence requires him to adopt such reasonable methods and apply such reasonable tests as are likely to discover defects if they exist."

But defendant insists that "it is not only well-settled by the authorities, but stands to reason that a railway company receiving a foreign car is not under obligation to make so critical examination of it as would be required of it in the inspection of one of its

own cars." [Citing White on Personal Injuries, sec. 238; Kelly v. Abbott, 63 Wis. 319, 23 N. W. 890; Keith v. Railway, 140 Mass. 175, 3 N. E. Rep. 28.] We think the receiving road is entitled to presume that a foreign car coming into its possession in the ordinary course of business is free from defects in construction, but we find that the Supreme Court has settled the question of the duty of the receiving carrier with respect to defects caused by ill repair. It is held in Gutridge v. Railway, 94 Mo. 468:

"While it is not incumbent on the receiving company, on the receipt of the car, to make tests to discover hidden defects in the construction, or in the materials used in the construction, still it is bound to inspect foreign cars just as it would and is required to inspect its own, after they have been in use. This duty devolves upon the company as much in the one case as in the other. While there are authorities which would seem to lead to different results, yet this, we think, is the better doctrine. The liability for a failure to inspect, or for the want of a proper inspection, is the same in the one case as in the other."

The gravamen of the action here is not the failure to inspect, but the failure to make proper inspection. Assuming the duty of inspecting a foreign car, defendant should have done the work with reasonable care, and should not have made any distinction between a foreign car and one of its own.

Further, defendant argues on the demurrer that plaintiff assumed the risk of being injured in the switching of a defective car to the repair track. It is held in Railway Co. v. Hennessy, 96 Fed. 713, that "where it was a part of the regular duties of a switchman to handle defective and broken cars, which were taken from trains and placed upon special side tracks used for the purpose, the mere presence of a car on such tracks was notice to him that it was probably defective, which cast upon him the risk in handling it, and the

duty of examining it for the particular defect, although sound cars, improperly loaded, were occasionally placed on the same tracks."

Of course defective cars must be transferred to repair shops or tracks; men must do that work and it would appear to be too plain for serious contention that where the servant is injured by the very defect which has caused his master to relegate the car for repairs, his injury is due to one of the natural and incidental risks of the employment and, consequently, falls within the class denominated "assumed risk."

But the master must not enhance the natural risks of the business by his own negligence, and if he does, and the servant is injured thereby, the rule is well-settled in this State that he will be liable to the servant since the latter never assumes risks created by his master's negligence. The inference is reasonable that defendant either negligently failed to discover the defective handhold or that it did discover it and negligently failed to follow its recognized custom of marking the defect with chalk in an attractive manner. The absence of such warning amounted to an assurance that the defects in the car did not include defective handholds. Plaintiff was entitled to rely to some extent on this implied assurance and we hold that any injury he received as the direct result of the negligent omission of defendant to give the customary notice would give him a cause of action for the resultant damages. The demurrer to the evidence was properly overruled.

We find no error in the trial of the case, but are satisfied the verdict is excessive. We shall not recite the details of the evidence relating to the nature and extent of the injuries. Plaintiff claims that he sustained broken ribs, bruises and sprains, but in the light of conceded facts and circumstances, we think these injuries have been greatly magnified in the telling. His principal affliction is "traumatic neurasthenia" and as to this, we cannot escape the conviction that although

his nervous affection has been seriously increased by his fall, it existed before and that it is not as serious as plaintiff would have us believe. We are aware that the issue of the nature and extent of the injuries was one of fact and that we have no right to invade the domain of the jury but where the excessiveness of the verdict is clearly apparent, i. e., is a subject about which reasonable minds can find no ground for difference of opinion, the appellate court is not invading the province of the jury in requiring that the judgment be reduced to proper bounds as a condition to its affirmance. Reasonably considered the evidence will not sustain a judgment in excess of three thousand dollars. On condition that within ten days from the filing of this opinion, the plaintiff enters a remittitur of two thousand dollars, the judgment will be affirmed. Otherwise, it will be reversed and the cause remanded for another trial. All concur.